## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

| | |
|---|---|
| IN RE THE APPLICATION OF )<br><br>GUSTAVO ADOLFO BORJA )<br>PERUGACHI )<br><br>    Plaintiff/Petitioner, )<br><br>v. )<br><br>ANA MARIA RODRIGUEZ GRANJA )<br><br>    Defendant/Respondent. )<br>_____ ) | Civil Action File No.: |

### VERIFIED COMPLAINT AND PETITION
### FOR RETURN OF THE CHILD

Plaintiff and Petitioner, GUSTAVO ADOLFO BORJA PERUGACHI, respectfully shows this Court as follows:

### I. INTRODUCTION

1.     This action is brought by GUSTAVO ADOLFO BORJA PERUGACHI ("Mr. Borja" or "Petitioner"), a citizen of Ecuador, to secure the return of his twelve year-old daughter, E.B.R. (the "Child").

2.     The Child's mother, Defendant/Respondent ANA MARIA RODRIGUEZ GRANJA ("Ms. Rodriguez" or "Respondent") initially brought the Child to the Southern District of Florida for a temporary visit with the authorization of the Petitioner and pursuant to a travel visa.

3.     The Respondent, however, has continued to reside in this District with the Child beyond the period of time authorized by the Petitioner and the courts of Ecuador and without Petitioner's consent or acquiescence.

4.      This Petition is filed pursuant to the Convention on the Civil Aspects of International Child Abduction (the "Hague Convention" or the "Convention")[1] and the International Child Abduction Remedies Act ("ICARA").[2] A copy of the Hague Convention is attached hereto as **Exhibit A**. The Hague Convention came into effect in the United States of America on July 1, 1988, and has been ratified between, among other Contracting States, the United States of America and Ecuador. A true and correct copy of Petitioner's Request for Initiation of the Process of International Return under the Hague Convention is attached as **Exhibit B**.

5.      The objects of the Hague Convention are:

Article 1(a): To secure the prompt return of children wrongfully removed to or retained in any Contracting State; and

Article 1(b): To ensure that rights of custody and of access under the law of one Contracting State are effectively respected in other Contracting States.

(*Id.*).

6.      The Hague Convention authorizes a federal district court to determine the merits of a claim for the wrongful retention of a child; it does not, however, permit the district court to consider the merits of any underlying custody dispute.

## II. JURISDICTION AND VENUE

7.      This Court has jurisdiction over this case pursuant to 22 U.S.C. § 9003(a) (jurisdiction under the Hague Convention) and 28 U.S.C. § 1331 (federal question jurisdiction).

---

[1] Oct. 25, 1980, T.I.A.S. No. 11,670 at 1, 22514 U.N.T.S. at 98, reprinted in 51 Fed. Reg. 10494 (1986).
[2] 22 U.S.C. §§ 9001-9011 (2014).

2

Venue is proper pursuant to 22 U.S.C. § 9003 and 28 U.S.C. § 1391(b) because, upon information and belief, the Child and Respondent are residing at the home of the Respondent's current husband in the Miami Division of the Southern District of Florida at 5400 NW 114 Avenue, Apartment 07-206, Doral, Florida 33178-3528.

### III. STATEMENT OF FACTS

8.      On September 1, ███, the Respondent gave birth to the Child in Benalcazar, Quito, Pichincha, Republic of Ecuador. A true and correct copy of the Child's birth certificate and a translation thereof are attached hereto as **Exhibit C**.

9.      As noted above, Petitioner and Respondent are the parents of the Child. Petitioner and Respondent were married and lived together in the city of Quito, Ecuador until their divorce on December 3, 2009. After the divorce and prior to Respondent's wrongful retention of the Child on August 8, 2017, the Child and Respondent lived together at Conjunto el Vinal, calle de los Vinedos, Urbanizacion el Vinal, Tumbaco in Quito, Ecuador.

10.      The Child attended school at Fundacion Colegio Americano de Quito in Ecuador from 2009 until her wrongful retention. A true and correct copy of a certificate from the school and a translation thereof is attached hereto as **Exhibit D**.

11.      On July 29, 2015, the Third Specialized Legal Unit of Family, Women, Childhood and Adolescence of Quito – Pichincha issued an order amending the parental rights of the Parents, in accordance with Articles 44, 45 of the Constitution of the Republic of Ecuador, Articles 11, 21, 122, 124 of the Organic Code of Childhood and Adolescence, and Article 19, third paragraph of the Organic Code of the Judicial Function. A true and correct copy of the July 29, 2015 Order and a translation thereof is attached hereto as **Exhibit E**.

3

12.     The Petitioner's rights were amended to establish that "[Petitioner] will pick[-up] his daughter from the residence of the mother, every fifteen days, Saturdays at 10h00 and will [return] her to the maternal residence on Sunday at 16h00; [Petitioner] may be able to share with his daughter Father's day from 09h00 to 1800; [Petitioner] will share annual holidays with his daughter alternating, starting August 10th, 2015 and continuing like this alternating between the parents; Christmas and New Years vacation will be shared alternating, starting this year Christmas with the mother and New Year with [Petitioner], next year she will spend Christmas with [Petitioner] and New Year with the mother and consecutively like this, alternating this [sic] holidays between the parents; School vacation at the end of the scholar year, at convenience of the child, will be coordinated between the parents of the child." *See* Ex. E.

13.     On December 2, 2015, the Provincial Court of Justice of Pichincha, Chamber of Family, Women, Childhood, Adolescence and Offender Teenagers of the Provincial Court of Pichincha accepted the Petitioner and Respondent's November 26, 2015 conciliatory agreement, which, among other things, authorized Petitioner and Respondent leave the county with the Child during the designated times that the Child spent with each respective parent during school holidays. A true and correct copy of the December 2, 2015 Order and a translation thereof is attached hereto as **Exhibit F**.

14.     Before, during, and after the separation of Petitioner and Respondent, Petitioner exercised his parental rights and maintained his relationship with the Child.

15.     On July 12, 2017, Petitioner granted permission for the Child to leave Ecuador with a tourist visa to travel to the United States from July 15, 2017 to August 8, 2017. A true and correct copy of the Certificate of Permission to Leave the County is attached hereto as **Exhibit G**. Petitioner granted permission under the false pretenses that the Respondent and Child were

4

only going for vacation and were not interested in living there illegally. A true and correct copy of the Affidavit of Petitioner is attached hereto as **Exhibit H**.

16.     After being advised multiple times that the Child's return would be postponed, the Respondent sent Petitioner an electronic mail on August 19, 2017 to advise that the Respondent and the Child would remain in the United States and were in the process of becoming citizens. *See* Ex. H.

17.     Upon learning of these circumstances, Petitioner immediately notified his attorney and the Court of the Respondent's violation of the Court Order. *See* Ex. H.  On September 7, 2017, the Legal Unit of Family, Women, Childhood and Adolescence of Quito – Pichincha entered an order requiring Respondent to observe and comply with the agreement reached by the Petitioner and Respondent on November 26, 2015 regarding Petitioner's visitation rights within 72 hours. A true and correct copy of the September 7, 2017 Order and a translation thereof is attached hereto as **Exhibit I**. Respondent has failed to comply with this order.

18.     Petitioner has remained in contact with the Child via cellular phone, but Respondent has not permitted Petitioner to see or visit with his daughter in over a year. *See* Ex. H.

19.     Respondent is wrongfully retaining the Child in the United States of America without Petitioner's permission.

5

## IV.    WRONGFUL RETENTION OF CHILD BY RESPONDENT: CLAIM FOR RELIEF UNDER THE HAGUE CONVENTION

20.    As set forth above, commencing on or about August 8, 2017, Respondent has wrongfully retained the Child in the United States within the meaning of Article 3 of the Convention and continues to wrongfully retain the Child in the State of Florida, United States, in violation of Article 3 and despite Petitioner's efforts to have the Child returned to Ecuador.

21.    Petitioner has never acquiesced or consented to the retention of the Child in the United States.

22.    Respondent's retention of the Child is wrongful within the meaning of Article 3 of the Convention because:

(a) It is in violation of Petitioner's rights of custody as established by the Constitution of the Republic of Ecuador, the Organic Code of the Judicial Function, and the Organic Code of Childhood and Adolescence. *See* Ex. E, F, I. Specifically, the December 2, 2015 Order only authorizes Respondent to leave Ecuador with the Child during "the last fifteen days" of the Child's summer holiday. *See* Ex. F. Respondent's permanent retention of the Child in the United States beyond "the last fifteen days" of the Child's summer holiday violates the December 2, 2015 Order. *See* Ex. F; and

(b) At the time of the Child's retention, Petitioner was actually exercising his rights of custody within the meaning of Articles 3 and 5 of the Convention and, but for Respondent's retention of the Child, Petitioner would have continued to exercise those rights.

6



23. Respondent is presently wrongfully retaining the Child in the State of Florida, County of Miami-Dade.

24. Upon information and belief, Respondent is keeping the Child at the residence of Respondent's current husband located at 5400 NW 114 Avenue, Apartment 07-206, Doral, Florida 33178-3528.

25. The Child is now twelve years old. The Hague Convention applies to children under sixteen (16) years of age and thus applies to the Child.

26. This Petition is filed less than one year from Respondent's wrongful retention of the Child. Petitioner has never consented or acquiesced to Respondent's wrongful retention of the Child.

## V. PROVISIONAL REMEDIES
### (22 U.S.C. § 9004 & HAGUE CONVENTION, ARTICLE 7(b))

27. Petitioner requests that this Court issue an immediate order restraining Respondent from removing the Child from the jurisdiction of this Court. Petitioner also asks that this Court schedule an expedited hearing on the merits of this Petition.

## VI. ATTORNEY FEES AND COSTS
### (22 U.S.C. § 9007)

28. To date, Petitioner has incurred attorneys' fees and costs as a result of the wrongful retention of the Child by Respondent.

29. Petitioner respectfully requests that this Court award him all costs and fees, including transportation costs, incurred to date as required by 22 U.S.C. § 9007.

7



## VII. NOTICE OF HEARING
### (22 U.S.C. § 9003(c))

30.     Pursuant to 22 U.S.C. § 9003(c), Respondent shall be given notice of these proceedings in accordance with the laws governing notice in interstate child custody proceedings.

## VIII. RELIEF REQUESTED

WHEREFORE, Petitioner prays for the following relief:

(a) An immediate temporary restraining order prohibiting the removal of the Child from the jurisdiction of this Court pending a hearing on the merits of this Verified Complaint, and further providing that no person acting in concert or participating with Respondent shall take any action to remove the Child from the jurisdiction of this Court pending a determination on the merits of the Verified Complaint;

(b) The scheduling of an expedited preliminary injunction hearing on the merits of the Verified Complaint; an order that Respondent show cause at this hearing why the Child should not be returned to Ecuador, and why such other relief requested in the Verified Complaint should not be granted; and, pursuant to Federal Rule of Civil Procedure 65, an order that the trial of the action on the merits be advanced and consolidated with the hearing on the preliminary injunction;

(c) A final judgment in Petitioner's favor requiring that the Child be returned to Ecuador;

(d) An Order requiring that Respondent pay Petitioner's attorneys' fees, expenses and costs, including transportation costs, under 22 U.S.C.

8

§ 9007, such expenses and costs to be resolved via post-judgment motion, consistent with the procedure outlined under Federal Rule of Civil Procedure 54; and

(e) For any such further relief as may be just and appropriate under the circumstances of this case.

Dated: August 7", 2018                    By:  _____

Thomas J. Cunningham, Esq.
Florida Bar No. 121997
Christopher R. Evans, Esq.
Florida Bar No. 105887
Dale A. Evans Jr., Esq.
Florida Bar No. 98496
LOCKE LORD LLP
777 S. Flagler Dr., Suite 215 E. Tower
West Palm Beach, FL 33401
Telephone:        561-833-7700
Facsimile:        561-655-8719
tcunningham@lockelord.com
christopher.evans@lockelord.com
dale.evans@lockelord.com
*Attorneys for Petitioner*

9

## VERIFICATION

I, GUSTAVO ADOLFO BORJA PERUGACHI, verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 6 day of August, 2018.

GUSTAVO ADOLFO BORJA PERUGACHI

10

# EXHIBIT A



### 28. CONVENTION ON THE CIVIL ASPECTS OF
### INTERNATIONAL CHILD ABDUCTION[1]

*(Concluded 25 October 1980)*

The States signatory to the present Convention,

Firmly convinced that the interests of children are of paramount importance in matters relating to their custody,

Desiring to protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence, as well as to secure protection for rights of access,

Have resolved to conclude a Convention to this effect, and have agreed upon the following provisions –

CHAPTER I — SCOPE OF THE CONVENTION

### Article 1

The objects of the present Convention are –

a)      to secure the prompt return of children wrongfully removed to or retained in any Contracting State; and

b)      to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States.

### Article 2

Contracting States shall take all appropriate measures to secure within their territories the implementation of the objects of the Convention. For this purpose they shall use the most expeditious procedures available.

### Article 3

The removal or the retention of a child is to be considered wrongful where –

a)      it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and

b)      at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

The rights of custody mentioned in sub-paragraph a) above, may arise in particular by operation of law or by reason of a judicial or administrative decision, or by reason of an agreement having legal effect under the law of that State.

---

[1] This Convention, including related materials, is accessible on the website of the Hague Conference on Private International Law (www.hcch.net), under "Conventions" or under the "Child Abduction Section". For the full history of the Convention, see Hague Conference on Private International Law, *Actes et documents de la Quatorzième session (1980)*, Tome III, *Child abduction* (ISBN 90 12 03616 X, 481 pp.).

## Article 4

The Convention shall apply to any child who was habitually resident in a Contracting State immediately before any breach of custody or access rights. The Convention shall cease to apply when the child attains the age of 16 years.

## Article 5

For the purposes of this Convention –
a)   "rights of custody" shall include rights relating to the care of the person of the child and, in particular, the right to determine the child's place of residence;
b)   "rights of access" shall include the right to take a child for a limited period of time to a place other than the child's habitual residence.

### CHAPTER II – CENTRAL AUTHORITIES

## Article 6

A Contracting State shall designate a Central Authority to discharge the duties which are imposed by the Convention upon such authorities.
Federal States, States with more than one system of law or States having autonomous territorial organisations shall be free to appoint more than one Central Authority and to specify the territorial extent of their powers. Where a State has appointed more than one Central Authority, it shall designate the Central Authority to which applications may be addressed for transmission to the appropriate Central Authority within that State.

## Article 7

Central Authorities shall co-operate with each other and promote co-operation amongst the competent authorities in their respective States to secure the prompt return of children and to achieve the other objects of this Convention.
In particular, either directly or through any intermediary, they shall take all appropriate measures –
a)   to discover the whereabouts of a child who has been wrongfully removed or retained;
b)   to prevent further harm to the child or prejudice to interested parties by taking or causing to be taken provisional measures;
c)   to secure the voluntary return of the child or to bring about an amicable resolution of the issues;
d)   to exchange, where desirable, information relating to the social background of the child;
e)   to provide information of a general character as to the law of their State in connection with the application of the Convention;
f)   to initiate or facilitate the institution of judicial or administrative proceedings with a view to obtaining the return of the child and, in a proper case, to make arrangements for organising or securing the effective exercise of rights of access;
g)   where the circumstances so require, to provide or facilitate the provision of legal aid and advice, including the participation of legal counsel and advisers;
h)   to provide such administrative arrangements as may be necessary and appropriate to secure the safe return of the child;
i)   to keep each other informed with respect to the operation of this Convention and, as far as possible, to eliminate any obstacles to its application.

### CHAPTER III – RETURN OF CHILDREN

## Article 8

Any person, institution or other body claiming that a child has been removed or retained in breach of custody rights may apply either to the Central Authority of the child's habitual residence or to the Central Authority of any other Contracting State for assistance in securing the return of the child.
The application shall contain –

a)      information concerning the identity of the applicant, of the child and of the person alleged to have removed or retained the child;

b)      where available, the date of birth of the child;

c)      the grounds on which the applicant's claim for return of the child is based;

d)      all available information relating to the whereabouts of the child and the identity of the person with whom the child is presumed to be.

The application may be accompanied or supplemented by –

e)      an authenticated copy of any relevant decision or agreement;

f)      a certificate or an affidavit emanating from a Central Authority, or other competent authority of the State of the child's habitual residence, or from a qualified person, concerning the relevant law of that State;

g)      any other relevant document.

## Article 9

If the Central Authority which receives an application referred to in Article 8 has reason to believe that the child is in another Contracting State, it shall directly and without delay transmit the application to the Central Authority of that Contracting State and inform the requesting Central Authority, or the applicant, as the case may be.

## Article 10

The Central Authority of the State where the child is shall take or cause to be taken all appropriate measures in order to obtain the voluntary return of the child.

## Article 11

The judicial or administrative authorities of Contracting States shall act expeditiously in proceedings for the return of children.

If the judicial or administrative authority concerned has not reached a decision within six weeks from the date of commencement of the proceedings, the applicant or the Central Authority of the requested State, on its own initiative or if asked by the Central Authority of the requesting State, shall have the right to request a statement of the reasons for the delay. If a reply is received by the Central Authority of the requested State, that Authority shall transmit the reply to the Central Authority of the requesting State, or to the applicant, as the case may be.

## Article 12

Where a child has been wrongfully removed or retained in terms of Article 3 and, at the date of the commencement of the proceedings before the judicial or administrative authority of the Contracting State where the child is, a period of less than one year has elapsed from the date of the wrongful removal or retention, the authority concerned shall order the return of the child forthwith.

The judicial or administrative authority, even where the proceedings have been commenced after the expiration of the period of one year referred to in the preceding paragraph, shall also order the return of the child, unless it is demonstrated that the child is now settled in its new environment.

Where the judicial or administrative authority in the requested State has reason to believe that the child has been taken to another State, it may stay the proceedings or dismiss the application for the return of the child.

## Article 13

Notwithstanding the provisions of the preceding Article, the judicial or administrative authority of the requested State is not bound to order the return of the child if the person, institution or other body which opposes its return establishes that –

a)      the person, institution or other body having the care of the person of the child was not actually exercising the custody rights at the time of removal or retention, or had consented to or subsequently acquiesced in the removal or retention; or

b) there is a grave risk that his or her return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation.

The judicial or administrative authority may also refuse to order the return of the child if it finds that the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of its views.

In considering the circumstances referred to in this Article, the judicial and administrative authorities shall take into account the information relating to the social background of the child provided by the Central Authority or other competent authority of the child's habitual residence.

## Article 14

In ascertaining whether there has been a wrongful removal or retention within the meaning of Article 3, the judicial or administrative authorities of the requested State may take notice directly of the law of, and of judicial or administrative decisions, formally recognised or not in the State of the habitual residence of the child, without recourse to the specific procedures for the proof of that law or for the recognition of foreign decisions which would otherwise be applicable.

## Article 15

The judicial or administrative authorities of a Contracting State may, prior to the making of an order for the return of the child, request that the applicant obtain from the authorities of the State of the habitual residence of the child a decision or other determination that the removal or retention was wrongful within the meaning of Article 3 of the Convention, where such a decision or determination may be obtained in that State. The Central Authorities of the Contracting States shall so far as practicable assist applicants to obtain such a decision or determination.

## Article 16

After receiving notice of a wrongful removal or retention of a child in the sense of Article 3, the judicial or administrative authorities of the Contracting State to which the child has been removed or in which it has been retained shall not decide on the merits of rights of custody until it has been determined that the child is not to be returned under this Convention or unless an application under this Convention is not lodged within a reasonable time following receipt of the notice.

## Article 17

The sole fact that a decision relating to custody has been given in or is entitled to recognition in the requested State shall not be a ground for refusing to return a child under this Convention, but the judicial or administrative authorities of the requested State may take account of the reasons for that decision in applying this Convention.

## Article 18

The provisions of this Chapter do not limit the power of a judicial or administrative authority to order the return of the child at any time.

## Article 19

A decision under this Convention concerning the return of the child shall not be taken to be a determination on the merits of any custody issue.

Article 20

The return of the child under the provisions of Article 12 may be refused if this would not be permitted by the fundamental principles of the requested State relating to the protection of human rights and fundamental freedoms.

CHAPTER IV – RIGHTS OF ACCESS

Article 21

An application to make arrangements for organising or securing the effective exercise of rights of access may be presented to the Central Authorities of the Contracting States in the same way as an application for the return of a child.
The Central Authorities are bound by the obligations of co-operation which are set forth in Article 7 to promote the peaceful enjoyment of access rights and the fulfilment of any conditions to which the exercise of those rights may be subject. The Central Authorities shall take steps to remove, as far as possible, all obstacles to the exercise of such rights.
The Central Authorities, either directly or through intermediaries, may initiate or assist in the institution of proceedings with a view to organising or protecting these rights and securing respect for the conditions to which the exercise of these rights may be subject.

CHAPTER V – GENERAL PROVISIONS

Article 22

No security, bond or deposit, however described, shall be required to guarantee the payment of costs and expenses in the judicial or administrative proceedings falling within the scope of this Convention.

Article 23

No legalisation or similar formality may be required in the context of this Convention.

Article 24

Any application, communication or other document sent to the Central Authority of the requested State shall be in the original language, and shall be accompanied by a translation into the official language or one of the official languages of the requested State or, where that is not feasible, a translation into French or English.
However, a Contracting State may, by making a reservation in accordance with Article 42, object to the use of either French or English, but not both, in any application, communication or other document sent to its Central Authority.

Article 25

Nationals of the Contracting States and persons who are habitually resident within those States shall be entitled in matters concerned with the application of this Convention to legal aid and advice in any other Contracting State on the same conditions as if they themselves were nationals of and habitually resident in that State.

Article 26

Each Central Authority shall bear its own costs in applying this Convention.

Central Authorities and other public services of Contracting States shall not impose any charges in relation to applications submitted under this Convention. In particular, they may not require any payment from the applicant towards the costs and expenses of the proceedings or, where applicable, those arising from the participation of legal counsel or advisers. However, they may require the payment of the expenses incurred or to be incurred in implementing the return of the child.

However, a Contracting State may, by making a reservation in accordance with Article 42, declare that it shall not be bound to assume any costs referred to in the preceding paragraph resulting from the participation of legal counsel or advisers or from court proceedings, except insofar as those costs may be covered by its system of legal aid and advice.

Upon ordering the return of a child or issuing an order concerning rights of access under this Convention, the judicial or administrative authorities may, where appropriate, direct the person who removed or retained the child, or who prevented the exercise of rights of access, to pay necessary expenses incurred by or on behalf of the applicant, including travel expenses, any costs incurred or payments made for locating the child, the costs of legal representation of the applicant, and those of returning the child.

Article 27

When it is manifest that the requirements of this Convention are not fulfilled or that the application is otherwise not well founded, a Central Authority is not bound to accept the application. In that case, the Central Authority shall forthwith inform the applicant or the Central Authority through which the application was submitted, as the case may be, of its reasons.

Article 28

A Central Authority may require that the application be accompanied by a written authorisation empowering it to act on behalf of the applicant, or to designate a representative so to act.

Article 29

This Convention shall not preclude any person, institution or body who claims that there has been a breach of custody or access rights within the meaning of Article 3 or 21 from applying directly to the judicial or administrative authorities of a Contracting State, whether or not under the provisions of this Convention.

Article 30

Any application submitted to the Central Authorities or directly to the judicial or administrative authorities of a Contracting State in accordance with the terms of this Convention, together with documents and any other information appended thereto or provided by a Central Authority, shall be admissible in the courts or administrative authorities of the Contracting States.

Article 31

In relation to a State which in matters of custody of children has two or more systems of law applicable in different territorial units –

a)      any reference to habitual residence in that State shall be construed as referring to habitual residence in a territorial unit of that State;

b)      any reference to the law of the State of habitual residence shall be construed as referring to the law of the territorial unit in that State where the child habitually resides.

Article 32

In relation to a State which in matters of custody of children has two or more systems of law applicable to different categories of persons, any reference to the law of that State shall be construed as referring to the legal system specified by the law of that State.

Article 33

A State within which different territorial units have their own rules of law in respect of custody of children shall not be bound to apply this Convention where a State with a unified system of law would not be bound to do so.

Article 34

This Convention shall take priority in matters within its scope over the *Convention of 5 October 1961 concerning the powers of authorities and the law applicable in respect of the protection of minors*, as between Parties to both Conventions. Otherwise the present Convention shall not restrict the application of an international instrument in force between the State of origin and the State addressed or other law of the State addressed for the purposes of obtaining the return of a child who has been wrongfully removed or retained or of organising access rights.

Article 35

This Convention shall apply as between Contracting States only to wrongful removals or retentions occurring after its entry into force in those States.
Where a declaration has been made under Article 39 or 40, the reference in the preceding paragraph to a Contracting State shall be taken to refer to the territorial unit or units in relation to which this Convention applies.

Article 36

Nothing in this Convention shall prevent two or more Contracting States, in order to limit the restrictions to which the return of the child may be subject, from agreeing among themselves to derogate from any provisions of this Convention which may imply such a restriction.

CHAPTER VI – FINAL CLAUSES

Article 37

The Convention shall be open for signature by the States which were Members of the Hague Conference on Private International Law at the time of its Fourteenth Session.
It shall be ratified, accepted or approved and the instruments of ratification, acceptance or approval shall be deposited with the Ministry of Foreign Affairs of the Kingdom of the Netherlands.

Article 38

Any other State may accede to the Convention.
The instrument of accession shall be deposited with the Ministry of Foreign Affairs of the Kingdom of the Netherlands.
The Convention shall enter into force for a State acceding to it on the first day of the third calendar month after the deposit of its instrument of accession.

The accession will have effect only as regards the relations between the acceding State and such Contracting States as will have declared their acceptance of the accession. Such a declaration will also have to be made by any Member State ratifying, accepting or approving the Convention after an accession. Such declaration shall be deposited at the Ministry of Foreign Affairs of the Kingdom of the Netherlands; this Ministry shall forward, through diplomatic channels, a certified copy to each of the Contracting States.

The Convention will enter into force as between the acceding State and the State that has declared its acceptance of the accession on the first day of the third calendar month after the deposit of the declaration of acceptance.

## Article 39

Any State may, at the time of signature, ratification, acceptance, approval or accession, declare that the Convention shall extend to all the territories for the international relations of which it is responsible, or to one or more of them. Such a declaration shall take effect at the time the Convention enters into force for that State.

Such declaration, as well as any subsequent extension, shall be notified to the Ministry of Foreign Affairs of the Kingdom of the Netherlands.

## Article 40

If a Contracting State has two or more territorial units in which different systems of law are applicable in relation to matters dealt with in this Convention, it may at the time of signature, ratification, acceptance, approval or accession declare that this Convention shall extend to all its territorial units or only to one or more of them and may modify this declaration by submitting another declaration at any time.

Any such declaration shall be notified to the Ministry of Foreign Affairs of the Kingdom of the Netherlands and shall state expressly the territorial units to which the Convention applies.

## Article 41

Where a Contracting State has a system of government under which executive, judicial and legislative powers are distributed between central and other authorities within that State, its signature or ratification, acceptance or approval of, or accession to this Convention, or its making of any declaration in terms of Article 40 shall carry no implication as to the internal distribution of powers within that State.

## Article 42

Any State may, not later than the time of ratification, acceptance, approval or accession, or at the time of making a declaration in terms of Article 39 or 40, make one or both of the reservations provided for in Article 24 and Article 26, third paragraph. No other reservation shall be permitted.

Any State may at any time withdraw a reservation it has made. The withdrawal shall be notified to the Ministry of Foreign Affairs of the Kingdom of the Netherlands.

The reservation shall cease to have effect on the first day of the third calendar month after the notification referred to in the preceding paragraph.

## Article 43

The Convention shall enter into force on the first day of the third calendar month after the deposit of the third instrument of ratification, acceptance, approval or accession referred to in Articles 37 and 38.

Thereafter the Convention shall enter into force –

(1)     for each State ratifying, accepting, approving or acceding to it subsequently, on the first day of the third calendar month after the deposit of its instrument of ratification, acceptance, approval or accession;

(2)     for any territory or territorial unit to which the Convention has been extended in conformity with Article 39 or 40, on the first day of the third calendar month after the notification referred to in that Article.

## Article 44

The Convention shall remain in force for five years from the date of its entry into force in accordance with the first paragraph of Article 43 even for States which subsequently have ratified, accepted, approved it or acceded to it.

If there has been no denunciation, it shall be renewed tacitly every five years.

Any denunciation shall be notified to the Ministry of Foreign Affairs of the Kingdom of the Netherlands at least six months before the expiry of the five year period. It may be limited to certain of the territories or territorial units to which the Convention applies.

The denunciation shall have effect only as regards the State which has notified it. The Convention shall remain in force for the other Contracting States.

## Article 45

The Ministry of Foreign Affairs of the Kingdom of the Netherlands shall notify the States Members of the Conference, and the States which have acceded in accordance with Article 38, of the following –

(1)     the signatures and ratifications, acceptances and approvals referred to in Article 37;

(2)     the accessions referred to in Article 38;

(3)     the date on which the Convention enters into force in accordance with Article 43;

(4)     the extensions referred to in Article 39;

(5)     the declarations referred to in Articles 38 and 40;

(6)     the reservations referred to in Article 24 and Article 26, third paragraph, and the withdrawals referred to in Article 42;

(7)     the denunciations referred to in Article 44.

In witness whereof the undersigned, being duly authorised thereto, have signed this Convention.

Done at The Hague, on the 25th day of October, 1980, in the English and French languages, both texts being equally authentic, in a single copy which shall be deposited in the archives of the Government of the Kingdom of the Netherlands, and of which a certified copy shall be sent, through diplomatic channels, to each of the States Members of the Hague Conference on Private International Law at the date of its Fourteenth Session.

# EXHIBIT B



Ministerio
de **Justicia, Derechos**
**Humanos y Cultos**

SUBSECRETARÍA DE DERECHOS HUMANOS Y CULTOS
SUBSECRETARÍA DE DESARROLLO NORMATIVO

0 3 5 0 0

2 3 MAY 2018      **Oficio Nro. MJDHC-DAC-2018-0187-O**

**Quito, D.M., 21 de mayo de 2018**

**Asunto:** Solicitud de restitución internacional de la niña ███████████

Mister
Theodore R. Coley
**WASHINGTONOFFICE OF CHILDREN'S ISSUES, UNITED STATES CENTRAL AUTHORITY**
En su Despacho

De mi consideración:

El señor **GUSTAVO ADOLFO BORJA PERUGACHI,** nacionalidad ecuatoriana, presentó ante esta Autoridad Central la solicitud en anexo, conforme a lo dispuesto por el Convenio de la Haya del 25 de octubre de 1980, para obtener la restitución internacional de la niña ███████████ de nacionalidad ecuatoriana, de 12 años de edad, nacida el 01 de Septiembre de ████.

El señor **GUSTAVO ADOLFO BORJA PERUGACHI,** en la solicitud de restitución internacional, manifiesta que la niña ███████████, viajó a Estados Unidos de Norte América junto a su madre, la señora **ANA MARÍA RODRÍGUEZ GRANJA,** de nacionalidad ecuatoriana, por un periodo de vacaciones, comprendido, desde el 15 de Julio de 2017, hasta el 08 de Agosto de 2017.

La señora **ANA MARÍA RODRÍGUEZ GRANJA,** incurre en una infracción a la custodia al retener ilegalmente a la niña ███████████, interrumpiendo toda relación con su padre el señor **GUSTAVO ADOLFO BORJA PERUGACHI,** solicitante de restitución internacional.

La niña ███████████ actualmente se encuentra retenida ilegalmente desde el 08 de Agosto de 2017 en Estados Unidos de Norte América.

En virtud de lo expuesto, solicito a su Autoridad Central que, conforme a los fines del Convenio de la Haya de 25 de octubre de 1980, se promueva un procedimiento de urgencia para asegurar el cumplimiento de la restitución internacional de la niña ███████████ a Ecuador.

Solicito comedidamente se acuse recibo de la presente solicitud y se mantenga informada a ésta Autoridad Central sobre el estado de este proceso.

Con sentimientos de distinguida consideración.

Atentamente,

Abg. Eulalia Gabriela Bermeo Tapia
**DIRECTORA DE AUTORIDAD CENTRAL**

jh



Ministerio
de **Justicia, Derechos**
**Humanos y Cultos**

**ARTÍCULO 28 DE LA CONVENCIÓN DE LA HAYA DEL 25 DE OCTUBRE DE 1980, SOBRE LOS ASPECTOS CIVILES DE LA SUSTRACCIÓN INTERNACIONAL DE MENORES**

Solicitante/ Applicant

Yo, *Gustavo Borja*, domiciliado en: *Pichincha - Ec*, autorizo, según lo exigido en el artículo 28 del Convenio sobre los Aspectos Civiles de la Sustracción Internacional de Menores, a la AUTORIDAD CENTRAL DEL ESTADO de ............................................, o a la persona designada por esta Autoridad Central para actuar en mi nombre.

I, *Gustavo Borja*, domiciled in: *Pichincha Ec*, authorize, as required by Article 28 of the Convention on the Civil Aspects of International Child Abduction, to the **CENTRAL AUTHORITY OF THE** ............................................, or to the Person designated by this Central Authority to act on my behalf.

FIRMA: .......................................

*Quito, 11 mayo 2018*
Lugar, día, mes, año



Ministerio
de **Justicia, Derechos
Humanos y Cultos**

## SOLICITUD DE RESTITUCIÓN / REQUEST FOR RETURN / REQUETE EN VUE DU RETURN

| AUTORIDAD CENTRAL REQUIRENTE / AUTORITE CENTRALE REQUERENTE / REQUESTING CENTRAL AUTHORITY | AUTORIDAD CENTRAL REQUERIDA / AUTORITE REQUISE / REQUESTED AUTHORITHY |
|---|---|
|  |  |

| SOLICITUD (Naturaleza y artículos relevantes del Convenio): DEMANDE (Objet et article pertinent de la Convention): REQUEST (Nature and relevant articles of the Convention): |
|---|

| 1- REFERENTE AL NIÑO, NIÑA O ADOLESCENTE / CONCERNE L'ENFANT. / CONCERNING THE FOLLOWING CHILD. |
|---|

**1.1 Niño, niña o Adolescente/Enfant/Child:**

**1**

| Nombres / Prénom / First Names: ▮▮▮▮ |
|---|
| Apellidos / Nom / Name: ▮▮▮▮▮▮ |

**2**

| Nombres / Prénom / First Names: |
|---|
| Apellidos / Nom / Name |

**3**

| Nombres / Prénom / First Names: |
|---|
| Apellidos / Nom / Name: |

**4**

| Nombres / Prénom / First Names: |
|---|
| Apellidos / Nom / Name: |



Ministerio
de **Justicia, Derechos**
**Humanos y Cultos**

**1.2 Fecha y lugar de nacimiento: / Date et lieu de naissance: / Date and place of birth:**

| | |
|---|---|
| **1.** September 1st, ■■■, Quito - Ecuador | |
| **2.-** | |
| **3.-** | |
| **4.-** | |

**1.3 Fecha que cumplirá la edad de 16 años el niño / Qui aura 16 ans le / Who will be the age of 16 on:**

| 1 | September 1st, 2021 | 3 | |
|---|---|---|---|
| 2 | | 4 | |

**1.4 Nacionalidad o nacionalidades: / Naionalitè ou nationalitès: / Nationality or nationalities:**

| 1 | Ecuadorian | 3 | |
|---|---|---|---|
| 2 | | 4 | |

**1.5 Sexo/Sexe/Sex**

| |
|---|
| **1.-** Female |
| **2.-** |
| **3.-** |
| **4.-** |

**1.6 Residencia habitual: /Recidence habituelle / Habitual residence**

| |
|---|
| **ADDRESS:** Conjunto el Viñal, calle de los Viñedos, Urbanización el Viñal, Tumbaco |
| |
| |





Ministerio
de **Justicia, Derechos**
**Humanos y Cultos**

**1.7 Pasaporte o documento de identificación No. / Passeport ou carte d`indentité (numéro s`il  y a lieu) / Passport or identification card:**

| | |
|---|---|
| 1.- ███████ | |
| 2.- | |
| 3.- | |
| 4.- | |

**1.8 Señas personales y fotografía (veánse anexos) / Signalement et èventuellement photo (voir anexes) / Description and photo, if possible (see annexes):**

| | |
|---|---|
| 1.- Green eyes, white skin, brown hair. | |
| 2.- | |
| 3.- | |
| 4.- | |

|  **2 PADRES/PARENTS/PARENTES.** |
|---|

**2.1 Madre/Mére/Mother**

| **Nombres / Prénom / First Names:** Ana Maria |
|---|
| **Apellidos / Nom / Name:** Rodriguez Granja |

**2.2 Fecha y lugar de nacimiento: / Date et lieu de naissance: / Date and place of birth:**

| May 2nd, 1980, Quito - Ecuador |
|---|

**2.3 Nacionalidad o nacionalidades: / Naionalitè ou nationalitès: / Nationality or nationalities:**

| Ecuadorian |
|---|

**2.4 Profesión: / Profession: / Occupation:**

| Student |
|---|

Ministerio
de **Justicia, Derechos**
**Humanos y Cultos**

**2.5 Residencia habitual: /Recidence habituelle / Habitual residence**

**ADDRESS:** Conjunto el Viñal, calle de los Viñedos, Urbanización el Viñal, Tumbaco

**2.6 Pasaporte o documento de identificación No. / Passeport ou carte d`indentité (numéro s`il y a lieu) / Passport or identification card:**

███████████

---

### 3 PADRE/PERE/ FATHER

**3.1 Padre/Pere/ Father**

**Nombres / Prénom / First Names:** Gustavo Adolfo

**Apellidos / Nom / Name:** Borja Perugachi

**3.2 Fecha y lugar de nacimiento: / Date et lieu de naissance: / Date and place of birth:**

March 17th, 1980, Quito - Ecuador

**3.3 Nacionalidad o nacionalidades: / Naionalitè ou nationalitès: / Nationality or nationalities:**

Ecuadorian

**3.4 Profesión: / Profession: / Occupation:**

Systems engineer

**3.5 Residencia habitual: /Recidence habituelle / Habitual residence**

**ADDRESS:** José Bosmediano 724 y Pasaje Lafayette, Quito

**3.6 Pasaporte o documento de identificación No. / Passeport ou carte d`indentité (numéro s`il y a lieu) / Passport or identification card:**

██████████



Ministerio
de **Justicia, Derechos Humanos y Cultos**

---

**4 DATOS PERSONALES DEL INDIVIDUO O INSTITUCION DEL SOLICITANTE / PARTE REQUIRENTE: PERSONNE OU INSTITUCIÓN / REQUESTING INDIVIDUAL OR INSTITUTION.**

---

**4-1 Nombres / Prénom / First Names:** Gustavo Adolfo

**Apellidos / Nom / Name:** Borja Perugachi

**4.2 Fecha y lugar de nacimiento: / Date et lieu de naissance: / Date and place of birth:**

March 17th, 1980, Quito - Ecuador

**4.3 Nacionalidad o nacionalidades: / Naionalitè ou nationalitès: / Nationality or nationalities:**

Ecuadorian

**4.4 Profesión: / Profession: / Occupation:**

Systems Engineer

**4.5 Residencia habitual: /Recidence habituelle / Habitual residence**

**ADDRESS:** José Bosmediano 724 y Pasaje Lafayette, Quito

**4.6 Pasaporte o documento de identificación No. / Passeport ou carte d`indentité (numéro s`il y a lieu) / Passport or identification card:**

█████

**4.7 Relación con el niño, niña o adolescente: / Lien ave l`endant: / Relation to the child:**

Father

**4.8 Nombre, dirección y teléfono del abogado o asesor jurídico, si lo hubiera: / Nom et adresse du conseller juridique (s`Il y a lleu): / Name and address of legal advisor or lawyer (if any):**

Ministerio
de **Justicia, Derechos**
**Humanos y Cultos**

Enrique Arboleda, Attorney-at-Law. Av. 12 de octubre N21-155 y Vicente Ramón Roca. Phone: 2544 767

**4.9 Bases de hecho o legales que justifican la solicitud (por ejemplo la resolucion de un tribunal): /Motifs de fait ou legaux justifiant la requete (par exemple decisión d`un tribunal): / Factual or legal grounds justifying the request (eg a court decisión):**

HAGUE CONVENTION OF 25 OCTOBER 1980 ON THE CIVIL ASPECTS OF INTERNATIONAL CHILD ABDUCTION

**4.10 Procedimientos civiles en curso o que serán iniciados: /Procédures civiles en cours ou qui seront enterprises: / Civil proceedings in progress or intended:**

Lawsuit for violation of visitation rights.

Lawsuit for child abduction.

**4.11 Lugar donde se supone que se encuentra el niño, niña o adolescencia: / Endroit ou l`enfant devrait se trouver: / Place where the child is thought to be:**

**4.12 Número de teléfono del solicitante: / Teléphone: /Telephone number:**

**4.13 Correo electrónico del solicitante: / e- mail:**



Ministerio
de **Justicia, Derechos**
**Humanos y Cultos**

▆▆▆▆▆▆

**4.14 Fecha presunta del traslado o retención ilícita del niño, niña o adolescente: / Date présumée déplacement illicite ou le maintien de l'enfant / Date alleged wrongful removal or retention of the child**

July 15th, 2017

**5 DATOS DE LA PERSONA QUE SUPUESTAMENTE HAYA SUSTRAÍDO O RETENIDO ILÍCITAMENTE AL NIÑO, NIÑA O ADOLESCENTE: / RENSELGNEMENTS CONCERNANT LA PERSONNE DONT IL EST ALLÉGUÉ QU`ELLE A DÉPLACÉ SANS DROIT OU RETENU L^ENFANT / INFORMATION CONCERNING THE PERSON ALLEGED TO HAVE IMPROPERLY REMOVED OR RETAINED THE CHILD:**

**5.1 Nombres / Prénom / First Names:** Ana Maria

**Apellidos / Nom / Name:** Rodriguez Granja

**5.2 Fecha y lugar de nacimiento: / Date et lieu de naissance: / Date and place of birth:**

May 02nd, 1980, Quito - Ecuador

**5.3 Nacionalidad o nacionalidades: / Naionalitè ou nationalitès: / Nationality or nationalities:**

Ecuadorian

**5.4 Profesión: / Profession: / Occupation:**

Student

**5.5 Ultimo domicilio conocido: / Demiére résidence connue: / Last known address:**

**ADDRESS:** Conjunto el Viñal, calle de los Viñedos, Urbanización el Viñal, Tumbaco

Ministerio
de **Justicia, Derechos
Humanos y Cultos**

**5.6 Pasaporte o documento de identificación No. / Passeport ou carte d`indentité (numéro s`il y a lieu) / Passport or identification card:**

████████

**5.7 Relación con el niño, niña o adolescente: / Lien ave l`endant: / Relation to the child:**

Mother

**5.8 Señas personales y fotografía (veánse anexos) / Signalement et èventuellement photo (voir anexes) / Description and photo, if possible (see anexes):**

Brown eyes, brown hair, white skin

**6 BREVES DETALLES SOBRE EL TIEMPO, LUGAR Y CIRCUNSTANCIAS DEL TRASLADO O DE LA RETENCIÓN DEL NIÑO, NIÑA O ADOLESCENTE: / QUELQUEN DETAILS SURE LE TEMP. LIEN ET CIRCUNSTONCE DE TRASLATION DE L`ENFANT OU LE RETENTION. / BRIEF DETAILS OF THE, PLACE AND CIRCUMSTANCES OF WHEN THE CHILD WAS REMOVED OR WHEN THE CHILD WAS RETAINED:**

**6.1** The father granted the mother a permission to leave the country by plane so the child may be able

to spend her school vacations in the Unites States of America from July 15th, 2017 to August 8th, 2017 in

Orlando, Florida.  The mother never came back with the child indicating that she decided to

permanently settle down in Miami, Florida.



Ministerio
de **Justicia, Derechos
Humanos y Cultos**

**6.2 Autoriza efectuar la restitución voluntaria del niño, niña o adolescente, o facilitar una solución amigable: / Autorisé à effectuer le retour volontaire de l'enfant ou faciliter une solution amiable: / Authorized to carry out the voluntary return of the child or to bring an amicable solution:**

| Yes, I accept | X |
| --- | --- |

| No, I do not accept | |
| --- | --- |

**Fecha/Date/Date:** May 11th, 2018

**Lugar/Fait à/Place:** Quito – Ecuador

Signature of the requestor



Ministerio
de **Justicia, Derechos**
**Humanos y Cultos**

## SOLICITUD DE RESTITUCIÓN / REQUEST FOR RETURN / REQUETE EN VUE DU RETURN

| **AUTORIDAD CENTRAL REQUIRENTE / AUTORITE CENTRALE REQUERENTE / REQUESTING CENTRAL AUTHORITY** | **AUTORIDAD CENTRAL REQUERIDA / AUTORITE REQUISE / REQUESTED AUTHORITHY** |
|---|---|
| Ecuador | EE. UU |

| **SOLICITUD** (Naturaleza y artículos relevantes del Convenio): **DEMANDE** (Objet et article pertinent de la Convention): **REQUEST** (Nature and relevant articles of the Convention): |
|---|

### 1- REFERENTE AL NIÑO, NIÑA O ADOLESCENTE / CONCERNE L`ENFANT. / CONCERNING THE FOLLOWING CHILD.

**1.1 Niño, niña o Adolescente/Enfant/Child:**

**1**

| Nombres / Prénom / First Names: ▮▮▮▮ |
|---|
| Apellidos / Nom / Name: ▮▮▮▮▮▮ |

**2**

| Nombres / Prénom / First Names: |
|---|
| Apellidos / Nom / Name |

**3**

| Nombres / Prénom / First Names: |
|---|
| Apellidos / Nom / Name: |

**4**

| Nombres / Prénom / First Names: |
|---|
| Apellidos / Nom / Name: |





Ministerio
de **Justicia, Derechos**
**Humanos y Cultos**

**1.2 Fecha y lugar de nacimiento: / Date et lieu de naissance: / Date and place of birth:**

| | |
|---|---|
| **1.**   01 septiembre ███, Quito - Ecuador | |
| **2.-** | |
| **3.-** | |
| **4.-** | |

**1.3 Fecha que cumplirá la edad de 16 años el niño / Qui aura 16 ans le / Who will be the age of 16 on:**

| 1 | 01 septiembre 2021 | 3 | |
|---|---|---|---|
| 2 | | 4 | |

**1.4 Nacionalidad o nacionalidades: / Naionalitè ou nationalitès: / Nationality or nationalities:**

| 1 | Ecuatoriana | 3 | |
|---|---|---|---|
| 2 | | 4 | |

**1.5 Sexo/Sexe/Sex**

| |
|---|
| **1.-** Femenino |
| **2.-** |
| **3.-** |
| **4.-** |

**1.6 Residencia habitual: /Recidence habituelle / Habitual residence**

| |
|---|
| **DIREECCIÓN:** Conjunto el Viñal, calle de los Viñedos Urbanización el Viñal, Tumbaco |
| |





Ministerio
de **Justicia, Derechos
Humanos y Cultos**

**1.7 Pasaporte o documento de identificación No. / Passeport ou carte d`indentité (numéro s`il y a lieu) / Passport or identification card:**

| | |
|---|---|
| 1.- ██████████ | |
| 2.- | |
| 3.- | |
| 4.- | |

**1.8 Señas personales y fotografía (veánse anexos) / Signalement et èventuellement photo (voir anexes) / Description and photo, if possible (see annexes):**

| |
|---|
| 1.- Ojos verdes, tez blanca, cabello castaño oscuro |
| 2.- |
| 3.- |
| 4.- |

| **2 PADRES/PARENTS/PARENTES.** |
|---|

**2.1 Madre/Mére/Mother**

| **Nombres / Prénom / First Names:** Ana María |
|---|
| **Apellidos / Nom / Name:** Rodríguez Granja |

**2.2 Fecha y lugar de nacimiento: / Date et lieu de naissance: / Date and place of birth:**

| 02 mayo 1980, Quito - Ecuador |
|---|

**2.3 Nacionalidad o nacionalidades: / Naionalitè ou nationalitès: / Nationality or nationalities:**

| Ecuatoriana |
|---|

**2.4 Profesión: / Profession: / Occupation:**

| Estudiante |
|---|





Ministerio
de **Justicia, Derechos**
**Humanos y Cultos**

**2.5 Residencia habitual: /Recidence habituelle / Habitual residence**

DIREECCIÓN: Conjunto el Viñal, calle de los Viñedos Urbanización el Viñal, Tumbaco

**2.6 Pasaporte o documento de identificación No. / Passeport ou carte d`indentité (numéro s`il y a lieu) / Passport or identification card:**

████████

## 3 PADRE/PERE/ FATHER

**3.1 Padre/Pere/ Father**

**Nombres / Prénom / First Names:** Gustavo Adolfo

**Apellidos / Nom / Name:** Borja Perugachi

**3.2 Fecha y lugar de nacimiento: / Date et lieu de naissance: / Date and place of birth:**

17 marzo 1980, Quito - Ecuador

**3.3 Nacionalidad o nacionalidades: / Naionalitè ou nationalitès: / Nationality or nationalities:**

Ecuatoriana

**3.4 Profesión: / Profession: / Occupation:**

Ingeniero en Sistemas

**3.5 Residencia habitual: /Recidence habituelle / Habitual residence**

DIRECCIÓN: José Bosmediano 724 y Pasaje Lafayette, Quito

**3.6 Pasaporte o documento de identificación No. / Passeport ou carte d`indentité (numéro s`il y a lieu) / Passport or identification card:**

████████7





Ministerio
de **Justicia, Derechos**
**Humanos y Cultos**

---

**4 DATOS PERSONALES DEL INDIVIDUO O INSTITUCION DEL SOLICITANTE / PARTE REQUIRENTE: PERSONNE OU INSTITUCIÓN / REQUESTING INDIVIDUAL OR INSTITUTION.**

---

**4-1 Nombres / Prénom / First Names:** Gustavo Adolfo

**Apellidos / Nom / Name:** Borja Perugachi

**4.2 Fecha y lugar de nacimiento: / Date et lieu de naissance: / Date and place of birth:**

17 marzo 1980, Quito - Ecuador

**4.3 Nacionalidad o nacionalidades: / Naionalitè ou nationalitès: / Nationality or nationalities:**

Ecuatoriana

**4.4 Profesión: / Profession: / Occupation:**

Ingeniero en Sistemas

**4.5 Residencia habitual: /Recidence habituelle / Habitual residence**

**DIREECCIÓN:** José Bosmediano 724 y Pasaje Lafayette, Quito

**4.6 Pasaporte o documento de identificación No. / Passeport ou carte d`indentité (numéro s`il y a lieu) / Passport or identification card:**

█████████

**4.7 Relación con el niño, niña o adolescente: / Lien ave l`endant: / Relation to the child:**

Padre

**4.8 Nombre, dirección y teléfono del abogado o asesor jurídico, si lo hubiera: / Nom et adresse du conseller juridique (s`ll y a lleu): / Name and address of legal advisor or lawyer (if any):**



Ministerio
de **Justicia, Derechos
Humanos y Cultos**

| |
| --- |
| Dr. Enrique Arboleda, Av. 12 de octubre N21-155 y Vicente Ramón Roca. Teléfono: 2544 767 |
| |
| |

**4.9 Bases de hecho o legales que justifican la solicitud (por ejemplo la resolucion de un tribunal): /Motifs de fait ou legaux justifiant la requete (par exemple decisión d`un tribunal): / Factual or legal grounds justifying the request (eg a court decisión):**

| |
| --- |
| CONVENCIÓN DE LA HAYA DEL 25 DE OCTUBRE DE 1980, SOBRE LOS ASPECTOS CIVILES DE LA SUSTRACCIÓN INTERNACIONAL DE MENORES |

**4.10 Procedimientos civiles en curso o que serán iniciados: /Procédures civiles en cours ou qui seront enterprises: / Civil proceedings in progress or intended:**

| |
| --- |
| Demanda por incumplimiento régimen de visitas. |
| Demanda por retención de menor de edad. |
| |

**4.11 Lugar donde se supone que se encuentra el niño, niña o adolescencia: / Endroit ou l`enfant devrait se trouver: / Place where the child is thought to be:**

| |
| --- |
| ████████████████████████████████████████ |
| |
| |

**4.12 Número de teléfono del solicitante: / Teléphone: /Telephone number:**

| |
| --- |
| ████████ |
| ██████████████████ |

**4.13 Correo electrónico del solicitante: / e- mail:**





Ministerio
de **Justicia, Derechos
Humanos y Cultos**

**4.14 Fecha presunta del traslado o retención ilícita del niño, niña o adolescente: / Date présumée déplacement illicite ou le maintien de l'enfant / Date alleged wrongful removal or retention of the child**

15 de julio 2017

**5 DATOS DE LA PERSONA  QUE SUPUESTAMENTE HAYA SUSTRAÍDO O RETENIDO ILÍCITAMENTE AL NIÑO, NIÑA O ADOLESCENTE: / RENSELGNEMENTS CONCERNANT LA PERSONNE DONT IL EST ALLÉGUÉ QU`ELLE A DÉPLACÉ SANS DROIT OU RETENU L^ENFANT / INFORMATION CONCERNING THE PERSON ALLEGED TO HAVE IMPROPERLY REMOVED OR RETAINED THE CHILD:**

**5.1 Nombres / Prénom / First Names:** Ana María

**Apellidos / Nom / Name:** Rodríguez Granja

**5.2 Fecha y lugar de nacimiento: / Date et lieu de naissance: / Date and place of birth:**

02 de mayo 1980, Quito - Ecuador

**5.3 Nacionalidad o nacionalidades: / Naionalitè ou nationalitès: / Nationality or nationalities:**

Ecuatoriana

**5.4 Profesión: / Profession: / Occupation:**

Estudiante

**5.5 Ultimo domicilio conocido: / Demiére résidence connue: / Last  known address:**

**DIREECCIÓN:** Conjunto el Viñal, calle de los Viñedos Urbanización el Viñal, Tumbaco



Ministerio
de **Justicia, Derechos**
**Humanos y Cultos**

**5.6 Pasaporte o documento de identificación No. / Passeport ou carte d`indentité (numéro s`il y a lieu) / Passport or identification card:**

█████████

**5.7 Relación con el niño, niña o adolescente: / Lien ave l`endant: / Relation to the child:**

Madre

**5.8 Señas personales y fotografía (veánse anexos) / Signalement et èventuellement photo (voir anexes) / Description and photo, if possible (see anexes):**

Ojos cafés, cabello castaño, piel blanca

---

**6 BREVES DETALLES SOBRE EL TIEMPO, LUGAR Y CIRCUNSTANCIAS DEL TRASLADO O DE LA RETENCIÓN DEL NIÑO, NIÑA O ADOLESCENTE: / QUELQUEN DETAILS SURE LE TEMP. LIEN ET CIRCUNSTONCE DE TRASLATION DE L`ENFANT OU LE RETENTION. / BRIEF DETAILS OF THE, PLACE AND CIRCUMSTANCES OF WHEN THE CHILD WAS REMOVED OR WHEN THE CHILD WAS RETAINED:**

**6.1** El padre concedió a la madre un permiso de salida del país por vía aérea para que la niña pase sus

vacaciones escolares en Estados Unidos desde el 15 de julio de 2017 hasta el 8 de agosto de 2017 en

Orlando Florida. La madre nunca regresó con la niña indicando que decidió radicarse definitivamente

en la ciudad de Miami, Florida.



Ministerio
de **Justicia, Derechos
Humanos y Cultos**

|  |
|  |
|  |
|  |
|  |

**6.2 Autoriza efectuar la restitución voluntaria del niño, niña o adolescente, o facilitar una solución amigable: / Autorisé à effectuer le retour volontaire de l'enfant ou faciliter une solution amiable: / Authorized to carry out the voluntary return of the child or to bring an amicable solution:**

| Si acepto | X |
|---|---|

| No acepto | |
|---|---|

| **Fecha/Date/Date:** 11 mayo 2018 |
|---|
| **Lugar/Fait à/Place:** Quito - Ecuador |

**Firma del solicitante**



# EXHIBIT C

[FLAG OF ECUADOR] **REPUBLIC OF ECUADOR**                    [LOGO: Department of Civil Records,
**Department of Civil Records, Identification and Documentation**  Identification and Documentation]

PROVINCIAL DIRECTION OF PICHINCHA

BIRTH CERTIFICATE

I   HEREBY   CERTIFY:   That   within   the   birth   registries   of:
******************************** the city of QUITO *********************
corresponding to   Volume ██   ██ Page ██, Minute ██   ; there is
the registration of: ███████████████

   - - - - - - - - - - - - - - - - - - - - - - - - - - -

born in: BENALCAZAR        ,  City:   QUITO   *************************
Province of PICHINCHA ******; on   SEPTEMBER FIRST, ████████
████   ********************;  DAUGHTER of: GUSTAVO ADOLFO BORJA
PERUGACHI, citizen of ECUADOR; and of: ANA MARJA RODRIGUEZ GRANJA,
citizen of ECUADOR.

QUITO, JANUARY 24TH, 2012.

Identification Document No. ███████

(*illegible signature*)         [SEAL: DEPARTMENT OF CIVIL RECORDS, IDENTIFICATION AND DOCUMENTATION
**REPRESENTATIVE OF THE PROVINCIAL DIRECTOR**   No 0138]

000006354835



# REPÚBLICA DEL ECUADOR
Dirección General de Registro Civil, Identificación y Cedulación



DIRECCION PROVINCIAL DE PICHINCHA
-------------------------------------------------

PARTIDA DE NACIMIENTO
----------------------------

CERTIFICO: Que en el registro de nacimientos de: *********************
**************************************** Del Canton QUITO*********************
correspondiente a      Tomo      Pagina    , Acta    ; consta
la inscripcion de: ████████████
-------------------------------------------------

nacido en: BENALCAZAR           , Canton: QUITO*********************
Provincia de PICHINCHA******; el PRIMERO *** de   SEPTIEMBRE del ████
████ ********************* ;HIJA de: GUSTAVO ADOLFO BORJA PERUGACHI
nacionalidad ECUATORIANA******* ; y de: ANA MARIA RODRIGUEZ GRANJA
nacionalidad ECUATORIANA*******.

QUITO*************** a, 24 de ENERO ***  del 2012.

Cedula: ████████████

DELEGADO/A DEL DIRECTOR/A PROVINCIAL

No. 0138

# EXHIBIT D



# Fundación Colegio Americano

## INTERNATIONAL EDUCATION

Quito, April 2, 2018

**MISION**

EDUCAR Y
FORMAR CON
EXCELENCIA EN
UN ENTORNO DE
LIBERTAD,
RESPONSABILIDAD
Y DEMOCRACIA,
SERES HUMANOS
INTEGROS
COMPROMETIDOS
CON SU
BIENESTAR, EL DE
LA SOCIEDAD Y
DEL MEDIO
AMBIENTE.

**CERTIFICATE**

To whom it may concern:

I hereby certify that ███████████████ was a regular student at Colegio Americano de Quito, from PK to 6th Grade (7mo EGB). She was registered from 2009- 2010 to 2016-2017 school years and attended classes regularly.

**MISSION**

TO EDUCATE WITH
EXCELLENCE, IN
AN ENVIRONMENT
OF LIBERTY,
RESPONSIBILITY,
AND DEMOCRACY,
WELL-ROUNDED
HUMAN BEINGS
WITH INTEGRITY,
COMMITTED TO
THEIR WELL-
BEING, THAT OF
SOCIETY, AND THE
ENVIRONMENT.

**LEANNE KIRK**

COORDINATOR
PRIMARY INTERNATIONAL



MEMBER OF



ACCREDITED BY:

RECOGNIZED BY:

MINISTERIO DE
EDUCACION

MANUEL BENIGNO CUEVA N80-190 URB. CARCELÉN
P.O. BOX 17-01-157
PBX: (593-2) 3976-300
FAX: (593-2) 247-2972
E-MAIL: smontalvo@fcaq.k12.ec
QUITO-ECUADOR

## Fundación Colegio Americano

### INTERNATIONAL EDUCATION

Quito, a 2 de Abril de 2018

**MISION**

EDUCAR Y
FORMAR CON
EXCELENCIA EN
UN ENTORNO DE
LIBERTAD,
RESPONSABILIDAD
Y DEMOCRACIA
SERES HUMANOS
INTEGROS
COMPROMETIDOS
CON SU
BIENESTAR, EL DE
LA SOCIEDAD Y
DEL MEDIO
AMBIENTE.

**CERTIFICACIÓN**

A quien corresponda:

Por el presente certifico que ▮▮▮▮▮▮▮▮▮▮▮▮ fue alumna regular
del Colegio Americano de Quito, desde Pre Kinder hasta 7mo EGC / 6to
Grado, la alumna estuvo matriculada entre loa años lectivos 2009 – 2010 a
2016 -2017 asistiendo regularmente a clases.

**MISSION**

TO EDUCATE WITH
EXCELLENCE, IN
AN ENVIRONMENT
OF LIBERTY,
RESPONSIBILITY,
AND DEMOCRACY,
WELL-ROUNDED
HUMAN BEINGS
WITH INTEGRITY,
COMMITTED TO
THEIR WELL-
BEING, THAT OF
SOCIETY, AND THE
ENVIRONMENT.

**LEANNE KIRK**

COORDINADORA
SECCION PRIMARIA INTERNACIONAL

 

MANUEL BENIGNO CUEVA N80-190 URB. CARCELEN
P.O. BOX 17-01-157
PBX: (593-2) 3976-300
FAX:  (593-2) 247-2972
E-MAIL: smontalvo@fcaq.k12.ec
QUITO ECUADOR

# EXHIBIT E

## REPUBLIC OF ECUADOR
www.funcionjudicial-pichincha.gob.ec

Case No. 17203-2013-39177

Mailbox No.: **2617**

Quito, Wednesday, July 29th, 2015
TO: BORJA PERUGACHI GUSTAVO ADOLFO
ATTORNEY-AT-LAW: ARBOLEDA ESPINEL ENRIQUE ALBERTO

Within the Special Case No. 17203-2013.39177 that follows BORJA PERUGACHI GUSTAVO ADOLFO against RODRIGUEZ GRANJA ANA MARIA, there is the following:

**REPORTING JUDGE: JACOME JARAMILLO PABLO ALEJANDRO, JUDGE OF THE LEGAL UNIT**

**THIRD SPECIALIZED LEGAL UNIT OF FAMILY, WOMEN, CHILDHOOD AND ADOLESCENCE OF QUITO – PICHINCHA.-** Quito, Wednesday, July 29th, 2015, 11h39.- Incorporate to the records the Official Letter No. 2015/4502/DVT, sent by DENNIS HERRERA ALVARACIN, Lieutenant Colonel of Police of the Joint Chief of Staff, Major of the Police District of Tumbaco (Acc), that informs about the impossibility to visit the child ███████████ ███████████ by her father, GUSTAVO ADOLFO BORJA PERUGACHI, on the date and under the circumstances reported within the police report attached to the aforesaid official letter.-

On the merits of the case, WHEREAS.-

GUSTAVO ADOLFO BORJA PERUGACHI appears at page 255 of the record, presenting the general data required by the law, requesting the Amendment of the Visitation Rights against ANA MARIA RODRIGUEZ GRANJA.- Once the requirements established by law have been accomplished, the lawsuit is qualified at page 270 and it is admitted to be processed according to article 271 of the Code of Childhood and Adolescence; it is ordered to notify the defendant Ana Maria Rodriguez, who appears in the case at page 271, acknowledging the lawsuit along with article 84 of the Code of Civil Procedure.-

Settlement and Answer to the Lawsuit Hearing was held at page 305. In the Hearing, they were present: the actor GUSTAVO ADOLFO BORJA PERUGACHI, together with his Court Agent ENRIQUEALBERTO ARBOLEDA ESPINEL, Attorney-at-Law; and, the defendant ANA MARIA RODRIGUEZ

GRANJA, together with his Court Agent ALFONSO CASTILLO VELASCO, Attorney-at-Law.- The judge initiated the hearing, promoting according to the Law, a settlement agreement between the parties, situation that was not accepted by the parties involved in the case to amend and rule new visitation right; therefore, the judge gave the floor to the defendant party and mother of the child ████████████████, who on the substance stated: "Your Honor, in this case the defendant does not accept any settlement based on the child's best interest. I request the child be listened. Article 44 of the Constitution establishes the principle of the best interest of the child, whose rights are above the rights of others, which is also established in article 11 of the Organic Code of Childhood and Adolescence (CONA); as well, it is important to consider binding precedent related to the same principle established in the Judicial Gazette series 18, No. 1, page 26. It is also important to rescue that guarantee of the comprehensive development of the child searches to ensure harmonious and comprehensive development of the child, from the physical, psychologic, affective, intellectual and ethical points of view; therefore, in the present case, it is not possible to amend the visitation rights, without previously hear the child, guaranteeing her rights, and in this case, we will follow the decision of the child. That is all for my intervention".- The judge gave the floor to the actor who expressed: "Your Honor, it must be considered that article 44 of the Constitution, besides the best interest, establishes in paragraph 2 that the children must have the right to a comprehensive development being this a group of facts, circumstances and events that allow a correct emotional and security relation within their family, school, social and community environments, determining that an emotional development is necessary. How is it possible that because of the lack of a good relation between the mother of the child and the father, the relation that has been maintained during several years with the child be affected? The visitation right is established in article 122 of the CONA, as mandatory for the parent that is not holding custody of the child. It is important to emphasize that the absence of settlement in this hearing is a clear sample that there is no will for the child's interest to exist, so she can have a correct relation with her father, demonstrating that they would never allow to prevail the so enunciated by the lawyer of the mother of the child, this fact was arisen from legal problems and the person I represent has been more than 90

days without visiting his daughter properly.  The reason is a famous permission to leave the country, not to go on vacations but to take the child to the United States of America, and in this same court, within the case No. 06256-2015, that by coincidence you accept to be processed, the mother, personally without notifying the father, presented a claim requesting the permission to leave the country be granted, claim that was denied because there are serious contradictions between the so requested and the grounds presented as motives of the supposed trip.  In this process the only thing that was determined is that there is no will to have a good relation, few minutes ago we were notified with a motion to increase child support, which we already acknowledged; yesterday, we were notified with a previous diligence to request custody of the child; they want to separate the child from her father by any possible way; the mother wants to take the child to the United States of America in any way.  Is the American dream so deep?.  Unfortunately, within the divorce process, free visits were established. Free to what, to the will of the mother.  Therefore, the only thing we expect is for the child to have a stable and proper relation with her father and that she would not be manipulated by her mother.  Article 106 of the CONA determines that childs could be listened, but if they are younger than 12 years old, it will be the judge who values their conversation.  Consequently, we ratify the request that the visitation rights be ruled, according to the claim that every moment the child has must be shared between her parents. Our request is established in paragraph No. 4 of the writ I presented:  for visits, we request complete weekends, picking her up, Friday at 19h00 and retuning her Sunday at 19h00, based on the fact that the mother spend the whole week with the child; holidays established by law, a holiday with the mother and a holiday with the father, and alternating, picking her up the day before the holiday at 19h00 and returning her the last day of the holiday at 19h00, I clarify this because it is said that the request thing must be exposed in order to avoid nullity; Father's day with the father and Mother's day with the mother, whether it is or not a day of visit; school vacations, days will be shared between the parents, half with the mother and half with the father; school vacations at the end of the school year, a month with the father and a month with the mother, alternating it every year; Christmas and New Year, 6 or 7 days with the father and 6 or 7 days of new year with the father or mother, alternating every year.  This is the request to

establish the visitation rights that we believe have the right to request, by virtue of the continuous violations, lack of agreement to have a correct emotional and family relation with my under age daughter. That is all for my intervention". Once the parties were listened, since there was not possible to reach an agreement according to the law, the Judge, consistent with article 274 of the *CONA*, decided to establish as provisional day of visits to the child ▊

▊ Saturdays from 10h00 to 15h00, the same day.- The undersigned Judge ordered the intervention of the *DINAPEN* and the Technical Team of this Judicial Unit to perform an exhaustive investigation on the immediate family of the child ▊ including family and close friends of the said immediate family. Future date to the Hearing to present evidence was determined.-

Hearing to present evidence is recorded within pages 352 to 354. The parties involved in the case appeared to the hearing.- Within the said diligence, the evidences announced by the parties were presented.

Consequently, in relation with the EVIDENCE PRESENTED BY THE ACTOR, they requested testimony, and after the oath was taken and the witnesses were warned about the punishment for perjury and the obligation they have to tell the truth, they answered: FIRST WITNESS: VALLEJO VEGA PABLO ENRIQUE: QUESTION 5: "since you know the child ▊ please indicate how you know her and the type of relation you have with her" ANSWER: "I know her because we have a close friendship and we belong to the same group of friends, my family gets along with ▊, we take advantage of the few times that ▊ is with her father to get out and have the families together, we have even travelled abroad once".- QUESTION 6.- "From your point of view, please indicates how you see the relation between GUSTAVO BORJA and his daughter ▊".- ANSWER.- "I have seen a mutual loving relation between father and daughter, I have felt envy for the relation Gustavo and ▊ have, for the affection and love they show each other".- QUESTION 7.- "Along the time you know Gustavo and ▊, have you been able to see or listen any kind of problem between them both".- ANSWER.- "Never, despite the fact I have been with them under different situation and in different places, their relation is very close and it is clear that Gustavo is like an intimate friend of

████ who is a quiet and calm child".- QUESTION 8.- "Within the relation ████-Gustavo, you have been able to see and to share different moments, have you seen that this moments are enough to share between a father and a daughter".- ANSWER: "evidently they are not enough, and the 2 parties look for each other, and a phone relation is not healthy for a child, father cannot see her much even being so close, considering that ████ lived 2 years with her father and I believe that abruptly stopping that relation is not convenient".- SECOND WITNESS: JUDITH DEL ROCIO CORTES LARA: QUESTION 5.- "since you know the child ████████████, please indicate how you know her and the type of relation you have with her" ANSWER: "I know her by social events, birthdays, and I have seen a loving relation with her father, she is selfless toward her father, I would say that they have similar character".- QUESTION 6.- "From your point of view, please indicates how you see the relation between GUSTAVO BORJA and his daughter ████".- ANSWER.- I have seen, and I have been told, that he is a very responsible father , she is happy with her father. I have seen suffering since they have not always been able to share time together. The father wants to be with his daughter and her mother has prevented that".- QUESTION 7.- "Along the time you know Gustavo and ████, have you been able to see or listen any kind of problem between them".- ANSWER.- "The problem I have felt is that they cannot share together, they have wanted to travel and they have not been able to go father and daughter since the mother has prevented it. They have planned to do something and they have not been able to do it".- QUESTION 8.- "Within the relation ████-Gustavo, you have been able to see and to share different moments, have you seen that this moments are enough to share between a father and a daughter".- ANSWER: "definitely no, I am a mother and I have seen that it is very important that a father shares with his daughter, that affects emotionally".- THIRD WITNESS: PAOLA BARBERIS GARZON: QUESTION 5.- "since you know the child ████████████, please indicate how you know her and the type of relation you have with her" ANSWER: "I know her because she is friend of my son, she is very lovely".- QUESTION 6.- "From your point of view, please indicates how you see the relation between GUSTAVO BORJA and his daughter ████".- ANSWER.- "It is not a typical case, I see Gustavo more like a mother than that a father, he has a double role

due to the absence of the mother, he is the one who goes to the school, he has been part of the group of women which is not usually frequented by fathers, he is very responsible with his daughter, there is nothing that his daughter has not have, he is always looking after his daughter, she is the princess and he is the soldier, he plays the role of mother, he is very respectful, he plays and educates his daughter, he is not rude with his daughter".- QUESTION 7.- "Along the time you know Gustavo and ███, have you been able to see or listen any kind of problem between them both".- ANSWER.- "never, I have been surprised by the change because I have seen through the change of visitation rights, he was not able to see his daughter normally, this is not good for his daughter, ███ is upset and her attitude is not normal, she is like distant with her father, probably for some information she has received".- QUESTION 8.- "Within the relation ███-Gustavo, you have been able to see and to share different moments, have you seen that this moments are enough to share between a father and a daughter".- ANSWER: "I think the thing must be lineal, children are not toys of their parents, we must try that children get along with their parents, the father is the father and that is not going to change until they die, the emotional stability of a child is the assurance their parents give to him/her".

Additionally, it was requested by writ recorded at page 331, the appearance of the Technical Team of this Judicial Unit according to article 275, first paragraph. Thus, MIROSLAVA ARMIJOS, Social Worker appears before the court.- Silvia Garcia, Psychologist, DOES NOT appear, to whom the actor has questioned: 1.- "Within the unique report you signed with SILVIA GARCIA, you have recommended that a child should share time with her father, please indicate what is the recommendation for this case".- ANSWER: "In relation to the question as team, the recommendation is that the father should see his daughter every 8 or 15 days, since there are cases where they cannot see them for years".- 2. "Within the conclusion No. 4, you say that there is a bond between the father and the daughter that should be maintained and get stronger, how is it possible to maintain it".- ANSWER: "the bond is kept with the relation between they both, with visitation rights dully ruled".-

Finally, the actor has delivered to the court, within 5 pages, certificates of honorability of the actor of this case, recorded at pages 347 to 351.-

Within the records, there are electronic mails (pages 335, 336 and 337) sent by Helen Perez, Student Counselor of the International Primary School of the Fundacion Colegio Americano de Quito who states: "Emy is a very sweet, loyal and caring child; therefore, for Emy to make a decision is a big load of responsibility that may affect her since by making this decision, she might be "falling" one of her parent, deciding her future and the one of her respective families".-

At pages 363 and 364, there is information provided by the Universidad Tecnica Particular de Loja, communicating that ANA MARIA RODRIGUEZ GRANJA is studying Pedagogy with a major in ENGLISH.-

The defendant, ANA RODRIGUEZ, within the Hearing to present evidence established that she has not announced and therefore would no present any evidence within the diligence; however, at page 318, she has appealed the Report of the Technical Office of this Judicial Unit.-

Being the status of this case, to be ruled, it is considered:

FIRST: This Judicial Unit is competent to know and solve the present case, competence that was given by virtue of the draw performed, recorded at page 5 of the record; and due to the established in articles 44, 175 of the Constitution of the Republic; article 255 of the Code of Childhood and Adolescence; article 234.4, 171 of the Organic Code of the Judicial Function;

SECOND: Within the process of the present case, this Judicial Unit has observed every legal requirement; therefore, no substantial solemnity has been omitted. Consequently, it is valid since it has followed the process established in the Organic Code of Childhood and Adolescence, and there has not been established any vice that may cause nullity or that have provoke defenselessness. According to what is established in articles 129 number 2 of the Organic Code of the Judicial Function, consistent with article 130 numbers 1, 2 and 8 ibidem; and, applying article 169 of the Constitution of the Republic, the whole process is declared valid.-

THIRD: GUSTAVO ADOLFO BORJA PERUGACHI and ANA MARIA RODRIGUEZ GRANJA are biological parents of a child named ▮▮▮▮▮▮▮▮.
▮▮▮▮▮▮▮▮; therefore, their legal capacity has been legalized in this case.-

FOURTH: REPORTS OF THE ASSISTANT ORGANS.- The Technical Team of this Judicial Unit in its Unique Report (pages 296 to 300), the same that has a key role to issue this Resolution, says: "BACKGROUND: Ana Maria Rodriguez has affirmed that she married Gustavo Borja and that he ... used to see her child every weekend or every 15 days until a year ago when she claimed child support since he did not allow the child to stay longer in the United States of America ... now, he sees her once a week since the child does not want to go ... she says that ▮▮▮ is a nervous and unsecure child and suffers for the separation from the father".- Gustavo Borja stated "... that during the time ▮▮▮ has been in the country, the visits have been performed every weekend and holiday previous agreement with the mother ...".- The child, ▮▮▮▮▮▮, said that: "the mother says that he can go visit her whenever he wants. She refers that when she is with the father, they have a good time, they ride biked, go to the pool, watch movies, and spend time at her grandparent's house... She does not have problem with the visits and she would like to spend the whole weekend with her father, every 15 days".- FAMILY STATUS: separated parents, the child ▮▮▮ is currently under the care of the mother and has permanent contact with the father. The child relates properly with both parents. ▮▮▮ has contact with the rest of the family of the father, during the visits of the father and daily via chat.   She maintains a proper relation with her paternal aunt Alejandra".- "HOUSING STATUS: The father lives in an apartment of his own that his parents gave him, it has two rooms besides the necessary environments.   His home has a suitable room for ▮▮▮".- "SOCIAL DIAGNOSTIC: ... The child relates properly with both parents and both environments, maternal and paternal, are convenient for ▮▮▮ well-being".- "RELEVANT INFORMATION FROM THE INTERVIEW THE PSYCHOLOGIST PERFORMED TO ▮▮▮▮▮▮▮▮: "When I go to my father's house, we go for a walk, ride bikes, go to the pool, watch movies, cook or visit my grandparents and my aunt, and sometimes he leaves me with her". "I always want to visit my father, but sometimes there are important things going on, as the funeral of my grandmother, and I cannot go, but he does not get mad for that and I would like to continue seeing him every fifteen days and there is no problem if my family has plans those days, we will be doing things separately".- CONCLUSIONS: Divorced parents, the child currently is under

care of the mother, has frequent contact with the father, with whom she has presumably lived for seasons. Social environments, maternal and paternal, are appropriate for the development of ███, they grant her well-being and protection. From the psychological evaluation it is concluded that none of the parents demonstrate currently psychopathological characteristics, but due to their personality have not been able to solve their new parental roles with enough maturity, which has caused that the child presents an evident emotional instability that must be treated by a professional, along with her parents. The contact of the child with her father has been developed by agreement between the parents and by the will of the mother.   There is a strong emotional bond between father and daughter, bond that must be kept and got stronger".-

From page 366 to 376, there is recorded the Report issued by the DINAPEN-P, in which, Bayron Ordonez Escobar, Second Corporal of the Police, Operative Agent of the DINAPEN-P, recommends refer to the statements given by the parents of the child ███████████████, who stated: GUSTAVO ADOLFO BORJA PERUGACHI: "After I separated from ANA MARIA RODRIGUEZ GRANJA, I have always been in permanent contact with my daughter ██████████████, who is nine years old, I have always been looking after her and to be with her the times the mother has allowed me to.  Once we separated, the visit were every weekend but this was interrupted when ANA MARIA RODRIGUEZ GRANJA requested a permission to leave the country for my daughter… when I denied to do so, as retaliation, she change the visitation rights from every weekend to one every fifteen days, insisting on the permission to leave the country. Due to my constant refusal to the request, the visits have been totally irregular and there have been periods of two and a half months without seeing my daughter ██████████████.  As it is clear, because the time my daughter has share a lot of things with me and my family, there is a strong bond between us, being this the only period that my daughter has had the stability that her mother has not been able to grant her".-

ANA MARIA RODRIGUEZ GRANJA: "… The times my daughter has been with her father, for visits, besides been left in charge of the paternal grandparents and her aunt, she suffers psychological mistreatment because he tries to discredit me and to put my dignity at risk, qualifying me as bad mother… I give my daughter all the love and care that she requires, especially the attention and

dedication that her normal development requires, what does not happen with her father, and that is reflected in her grades since she is an excellent student.-In the same way, I would like to notice that in case my daughter and I would move to the United States of America because of my work, the father of my daughter may visit her when he can or my daughter may come to Ecuador whenever she wants to".-

The Judge has listened in private to the child ▮▮▮▮▮▮▮▮▮▮▮▮▮▮.--

SIXTH: 1. The Constitution of the Republic of Ecuador, in its article 44 establishes that "The State, the society and the family will promote as a priority the comprehensive development of children and adolescents, and they will assure the complete exercise of their rights, the principle of the best interest will be paid attention and their rights will prevails over the rights of other persons, Children and adolescents will have the right to a comprehensive development, understood it as the process to growth, mature ..., in an emotional and secure family, school, social and community environment...", in its article 45.- "Children and adolescents will have the common rights of human being, beside the ones specified for their age... Children and adolescents have the right to a physical and psychological integrity, ...to have a family and to enjoy family and community coexistence...".

"Article 10. Persons, communities, ... are entitled and will have the rights guarantee in the Constitution and international treaties..." "Article 11. The exercise of the rights will be ruled by the following principles: 1. The rights may be exercised, promoted and required individually or collectively before the competent authorities, who will ensure their compliance. 2. Every person is equal and will have the same rights, duties and opportunities. No one may be differentiated by reasons of..., that may have for object or result on diminishing or annulling the acknowledgement, enjoyment or exercise of the rights.   The Law will punish every way of differentiation.   3. The rights and guarantees established in the Constitution and in other international instruments of human rights will be directly and immediately apply by and before any public, administrative or legal servant, by law or by request of any third person. Conditions or requirements that are not established un the Constitution or the Law would not be required to the exercise of constitutional rights and guarantees. Rights will be fully justiciable. Lack of legal norm is not possible to

be alleged to justify its violation or ignorance, in order to dismiss an action for those facts or to deny their acknowledgment.   4. No legal norm may limit the content of constitutional rights or guarantees. 5. As for constitutional rights and guarantees, public, administrative or legal servants must apply the norm and the best interpretation in favor of its effective enforcement...".- 6.2.- Article 83.1 ibidem establishes that Ecuadorian have the following duties and responsibilities, among others: "... 1.- To respect and comply with the Constitution, law and legal decisions of competent authority..."   6.3.- The Convention on the Rights of the Child, in force since September 2nd, 1990, the Universal Declaration on Human Rights, international covenant on human rights, indicate that every person has every right and liberty establish in them, without differentiation by race, color, sex, language, religion, politics or any other type of opinion, national or social origin, economic position, birth or any other condition. They proclaim that childhood has the right to care and especial assistance; and, that family, as fundamental group of the society and natural mean to growth and of well-being of all of its members, and in particular to the children, should receive protection and necessary assistance to be able to fully assume its responsibilities within the community; therefore, they recognize that children, for their full and harmonious development of their personality, they should grow within a family, in a happy , lovely, comprehensive environment, being prepared to an independent life in society.  This convention points out the necessity to provide a special protection to children, enunciated by the Geneva Declaration of the Rights of the Child of 1924 and by the Declaration on the Right of the Child adopted by the General Assembly on November 20th, 1959 and recognized in the Universal Declaration on Human Rights, the International Covenant on Civil and Political Rights (particularly articles 23 and 24), the International Covenant on Economic, Social and Cultural Rights (particularly article 10) and the statutes and corresponding instruments of the specialized organisms and international organizations that are interested in the child's well-being.  Considering that, as the Declaration on the Rights of the Child, "the child, due to his/her lack of physical and psychological maturity, need protection and special care, including dully legal protection, before and after the birth; consequently, it says: "Article 1.- For the purposes of the present Convention, a child means every human being below the age of eighteen years unless under

the law applicable to the child, majority is attained earlier. Article 2.- 1. States Parties shall respect and ensure the rights set forth in the present Convention to each child within their jurisdiction without discrimination of any kind, irrespective of the child's or his or her parent's or legal guardian's race, colour, sex, language, religion, political or other opinion, national, ethnic or social origin, property, disability, birth or other status of the child, his/her parents or his/her legal representatives. 2. States Parties shall take all appropriate measures to ensure that the child is protected against all forms of discrimination or punishment on the basis of the status, activities, expressed opinions, or beliefs of the child's parents, legal guardians, or family members. Article 3. 1. In all actions concerning children, whether undertaken by public or private social welfare institutions, courts of law, administrative authorities or legislative bodies, the best interests of the child shall be a primary consideration. 2. States Parties undertake to ensure the child such protection and care as is necessary for his or her well-being, taking into account the rights and duties of his or her parents, legal guardians, or other individuals legally responsible for him or her, and, to this end, shall take all appropriate legislative and administrative measures. Article 5. States Parties shall respect the responsibilities, rights and duties of parents or, where applicable, the members of the extended family or community as provided for by local custom, legal guardians or other persons legally responsible for the child, to provide, in a manner consistent with the evolving capacities of the child, appropriate direction and guidance in the exercise by the child of the rights recognized in the present Convention. Article 9. 1. States Parties shall ensure that a child shall not be separated from his or her parents against their will, except when competent authorities subject to judicial review determine, in accordance with applicable law and procedures, that such separation is necessary for the best interests of the child. Such determination may be necessary in a particular case such as one involving abuse or neglect of the child by the parents, or one where the parents are living separately and a decision must be made as to the child's place of residence. 2. In any proceedings pursuant to paragraph 1 of the present article, all interested parties shall be given an opportunity to participate in the proceedings and make their views known.   3. States Parties shall respect the right of the child who is separated from one or both parents to maintain personal relations and direct

contact with both parents on a regular basis, except if it is contrary to the child's best interests. Article 14.1. States Parties shall respect the right of the child to freedom of thought, conscience and religion. 2. States Parties shall respect the rights and duties of the parents and, when applicable, legal guardians, to provide direction to the child in the exercise of his or her right in a manner consistent with the evolving capacities of the child."

SEVENTH: Since the parents have not reached an agreement regarding the amendment of the visitation rights for their daughter, and considering that ANA MARIA RODRIGUEZ GRANJA, during the corresponding hearing has affirm that: "... in this case, we will follow the decision of the child..."; likewise, the referred child has said to the Technical Team of this Judicial Unit that: "When I go to my father's house, we go for a walk, ride bikes, go to the pool, watch movies, cook or visit my grandparents and my aunt, and sometimes he leaves me with her".  "I always want to visit my father, but sometimes there are important things going on, as the funeral of my grandmother, and I cannot go, but he does not get mad for that and I would like to continue seeing him every fifteen days and there is no problem if my family has plans those days, we will be doing things separately"; and also witnesses presented by the actor have been coherent and consistent within their statements, when answering QUESTION 7.- "Along the time you know Gustavo and ▇▇▇, have you been able to see or listen any kind of problem between them both".- ANSWERS: "Never, despite the fact I have been with them under different situation and in different places, their relation is very close and it is clear that Gustavo is like an intimate friend of ▇▇▇ who is a quiet and calm child"; "The problem I have felt is that they cannot share together, they have wanted to travel and they have not been able to go father and daughter since the mother has prevented it.  They have planned to do something and they have not been able to do it"; and, "never, I have been surprised by the change because I have seen through the change of visitation rights, he was not able to see his daughter normally, this is not good for his daughter, ▇▇▇ is upset and her attitude is not normal, she is like distant with her father, probably for some information she has received".- Finally, MIROSLAVA ARMIJOS, Social Worker of the Technical Team of this Judicial Unit when answering the clarifications requested by the actor when asked; 1.- "Within the unique report you signed with SILVIA GARCIA, you have

recommended that a child should share time with her father, please indicate what is the recommendation for this case".- ANSWER: "In relation to the question as team, the recommendation is that the father should see his daughter every 8 or 15 days, since there are cases where they cannot see them for years".- 2. "Within the conclusion No. 4, you say that there is a bond between the father and the daughter that should be maintained and get stronger, how is it possible to maintain it".- ANSWER: "the bond is kept with the relation between they both, with visitation rights dully ruled".-

Making a brief analysis of the evidence presented by the parties, according to the rules for sound judgment, this Judge, in accordance with articles 44, 45 of the Constitution of the republic of Ecuador, articles 11, 21, 122, 124 of the Organic Code of Childhood and Adolescence; and, article 19, third paragraph of the Organic Code of the Judicial Function, in use of his authority RULES:

1. To accept the demand to Amend the Visitation Rights presented by GUSTAVO ADOLFO BORJA PERUGACHI against the mother of his child ANA MARIA RODRIGUEZ GRANJA.

2. The father will visit his daughter ▆▆▆▆▆▆▆▆▆▆▆▆ as follows: a. The father of the child will pick his daughter from the residence of the mother, every fifteen days, Saturdays at 10h00 and will retour her to the maternal residence on Sunday at 16h00; b. The father may be able to share with his daughter Father's day from 09h00 to 18h00; c. The father will share annual holidays with his daughter alternating, starting August 10th, 2015 and continuing like this alternating between the parents; d. Christmas and New Years vacations will be shared alternating, starting this year Christmas with the mother and New Year with the father; next year she will spend Christmas with the father and New Year with the mother and consecutively like this, alternating this holidays between the parents; e. School vacations at the end of the scholar year, at convenience of the child, will be coordinated between the parents of the child.- These new visitation rights will be followed by the father, personally and not through third parties, and in the way hereby established, with the purpose to maintain the relation parent-daughter according to articles 22, 118, 122 and 124 of the Organic Code of Childhood and Adolescence, as well as for her to relate with the paternal family.

The TECHNICAL OFFICE of this Judicial Unit must intervene, in order to regularly, twice a year (by semester) report on the visitation rights that is acknowledge by this Judicial Unit.

The parties are requested to respect the visitation rights hereby established.

CASE 39177-2013-

Please notify.-

s.).- JACOME JARAMILLO PABLO ALEJANDOR, JUDGE OG THE JUDICIAL UNIT;

I hereby notify to the appropriate purposes.
[*SEAL: (illegible signatures)*]
DARWIN PATRICIO LESCANO LEON
**SECRETARIAT OF THE THIRD LEGAL UNIT OF FAMILY, WOMEN, CHILDHOOD AND ADOLESCENCE**

**REPUBLICA DEL ECUADOR**
www.funcionjudicial-pichincha.gob.ec

Juicio No: 17203-2013-39177                                              Casilla No: **2617**

Quito, miércoles 29 de julio del 2015
A: BORJA PERUGACHI GUSTAVO ADOLFO
Dr./Ab.: ARBOLEDA ESPINEL ENRIQUE ALBERTO

En el Juicio Especial No. 17203-2013-39177 que sigue  BORJA PERUGACHI GUSTAVO
ADOLFO en contra de RODRIGUEZ GRANJA ANA MARIA, hay lo siguiente:

**JUEZ PONENTE: JACOME JARAMILLO PABLO ALEJANDRO, JUEZ DE LA UNIDAD JUDICIAL
UNIDAD JUDICIAL ESPECIALIZADA TERCERA DE LA FAMILIA, MUJER, NIÑEZ
Y ADOLESCENCIA DEL CANTON QUITO DE LA PROVINCIA DE PICHINCHA DE
PICHINCHA.-** Quito, miércoles 29 de julio del 2015, las 11h39.- Agréguese al proceso el
Oficio No. 2015/4502/DVT, remitido por DENNIS HERRERA ALVARACIN Teniente
Coronel de Policía de E.M. Comandante del Distrito de Policía de Tumbaco (Acc) que informa
sobre la imposibilidad de visitar a la niña ▆▆▆▆▆▆▆▆ por parte de su padre
el señor GUSTAVO ADOLFO BORJA PERUCHACHI, en la fecha y circunstancias expresadas
en el parte policial que se adjunta a dicho oficio.- En lo principal, VISTOS.- Comparece el señor
Ing. Gustavo Adolfo Borja Perugachi a fs. 255 del proceso consignando sus generales de ley,
con demanda de Modificación del Régimen de Visitas en contra de la señora ANA MARIA
RODRIGUEZ GRANJA.- Cumplidos los requisitos se califica la demanda a fojas 270 y se
admite a trámite establecido en el Art. 271 del Código de la Niñez y la Adolescencia; se dispone
citar a la demandada señora Ana María Rodríguez, quien comparece a juicio a fs. 271 dándose
por citada de conformidad con el art. 84 del Código de Procedimiento Civil.-  La Audiencia de
Conciliación y Contestación a la Demanda, se lleva a cabo a fojas 305; a la misma comparecen:
el actor señor GUSTAVO ADOLFO BORJA PERUGACHI, acompañado de su abogado
patrocinador DR. ENRIQUE ALBERTO ARBOLEDA ESPINEL; y, comparece la demandada
señora ANA MARIA RODRIGUEZ GRANJA acompañada de  su abogado patrocinador DR.
ALFONSO CASTILLO VELASCO.- El Juzgador da inicio a la misma, promoviendo de
conformidad con la Ley, un acuerdo conciliatorio entre las partes, situación ésta que no es
acogida por las partes procesales para modificar y regular un nuevo régimen de visitas, por lo
que, acto seguido, se concedió la palabra a la parte demandada y madre de la menor de edad
▆▆▆▆▆▆▆▆▆▆▆ quien manifiesta en lo principal: "Señor Juez, en este caso no
hay acuerdo alguno por parte de la demandada, esto por el interés superior del menor le solicito
se escuche a la menor, el art 44 de la Constitución establece el principio del interés superior del
niño, cuyos derechos están sobre los derechos de los demás, de igual manera se establece en el
Art 11 del CONA, siendo importante considerar la jurisprudencia vinculante, que en relación al
mismo principio se establece en la gaceta judicial serie 18, No 1 pagina 26. También se debe
rescatar que la garantía del desarrollo integral del menor, establece el asegurar el desarrollo
armónico e integral de la menor, desde el punto de vista físico, psicológico, afectivo, intelectual
y ético, en el presente caso, no es posible modificar el régimen de visitas, sin previamente
escuchar a la menor, garantizando sus derechos, y en este caso nos atenderemos exclusivamente
a la decisión de la niña, hasta aquí mi intervención".- Se concede la palabra a la parte actora
quien manifiesta: "Señor Juez, se debe tomar en cuenta el Art 44 de la Constitución, en el que
además del interés superior su inciso 2 manifiesta que los niños deben tener derecho a un
desarrollo integral siendo este un conjunto de hechos, circunstancias y eventos que permitan una
relación correcta en su entorno familiar, escolar, social, y comunitario de afectividad y
seguridad, terminando que se necesita un desarrollo afectivo emocional, como es posible que

por una falta de una buena relación de la madre de la menor hacía con su padre se vea afectada, la relación que se ha venido manteniendo durante varios años con la menor, en derecho de visitas está en el Art 122 del CONA, como obligatorio para con uno de los padres que no tenga la tenencia de la menor, se debe recalcar que a falta de conciliación en esta audiencia es una muestra clara que no hay ninguna voluntad para que exista un interés realmente hacia a menor, para que tenga una relación correcta hacia su padre demostrando que en ningún momento quieren hacer prevalecer lo enunciado por el abogado de la madre de la niña, este hecho se dio por problemas judiciales y mi defendido más de 90 días ha estado sin ver como corresponde a su hija, esto tiene un solo motivo, es un famoso permiso de salida del país no para irse de vacaciones si no por el hecho de llevarse a la menor a EEUU, y en esta misma judicatura la causa No 06256-2015. Que por coincidencia usted avoco conocimiento, la madre de manera personal, sin comunicar nada al padre presenta una demanda para que se le otorgue el permiso de salida del país, demanda que fue negada, porque existen graves contradicciones entre lo solicitado con lo argumentado, para motivos del supuesto viaje, en este proceso lo único que se determino es que no hay la voluntad de tener una buena relación, hace unos momentos fuimos citados con un incidente de aumento de pensión, que ya nos dimos por citados, ayer fuimos citados con una diligencia previa para pedir la patria potestad de la niña, de cualquier manera quiere separarse a la niña de su padre, de cualquier manera la madre quiere llevar a la niña a EUU, tan profundo será el sueño americano. Lamentablemente en el juicio de divorcio se estableció visitas libres, libres a que, libres a la voluntad de la madre, es por eso que lo único que se pretende es que la niña tenga una relación estable y correcta con su padre y no sea manipulada la niña, por su madre. El Art 106 del CONA, se establece que pueden ser escuchados pero cuando sean menores de 12 años, el juez será el que valore su conversación, por tanto nos ratificamos en el pedido de una regulación de régimen de visitas, conforme lo solicitado, esto es que todos los momentos que la menor tiene deben ser compartido entre sus padres, en el No 4 de mi escrito esta la pretensión, que decíamos para las visitas, esto es el fin de semana completo, retirándole el viernes a las 19h00, y retornándole el día domingo a las 19h00, pedido que lo hago en virtud de que la madre pasa toda la semana con a menor, los feriados establecidos por ley, un feriado para la madre y un feriado con el padre, y así alternadamente, retirándole el día anterior al feriado alas 19h00, y entregándole el último día de feriado a las 19h00, aclaro esto porque cuando no se expone lo solicitado se dice que se debe indicar para evitar nulidades, el día del padre en el padre y el día de la madre con la madre sea este día de visitas o no, vacaciones escolares, los días serán compartidos mitad con la madre y mitad con el padre, vacaciones escolares de fin de año, un mes con el padre un mes con la madre cambiando de más alternadamente cada año, navidad y año nuevo 6 o 7 días con el padre y 6 o 7 días de año nuevo con el padre o madre cambiando alternadamente cada año, ese es el pedido para la implantación del régimen de visitas el cual creemos tenemos todo el derecho, de solicitarlo, en virtud de las constaste violaciones, ante la falta de acuerdo para tener una relación afectiva y familiar correcta con mi hija menor de edad, hasta aquí nuestra intervención".- Luego de escuchadas las partes y al no haber sido posible conciliar conforme lo determina la ley, el Juzgador de conformidad con lo establecido en el art. 274 del CONA resolvió fijar como día de visita provisional a la menor ▮▮▮▮▮▮ los días sábados de 10h00 a 15h00 horas del mismo día.- El suscrito Juez, dispuso la intervención de la DINAPEN y el Equipo Técnico de esta Unidad Judicial a fin de que realice una investigación exhaustiva del núcleo familiar donde se desenvuelve la niña ▮▮▮▮▮▮ incluyendo a los familiares y personas allegadas a dicho núcleo. Se fijó fecha futura para la audiencia de prueba.- A la audiencia de prueba constante de fs. 352 a 354, comparecieron las partes procesales.- En dicha diligencia se evacuó la prueba anunciada por las partes procesales.- Así pues, con respecto a la PRUEBA DE LA PARTE ACTORA, ha solicitado la declaración testimonial, que luego del juramento correspondiente y advertidos los testigos de las penas del perjurio y de la obligación que tiene de decir la verdad responden: PRIMER TESTIGO: VALLEJO VEGA PABLO ENRIQUE: PREGUNTA 5: "en virtud de que usted conoce a la niña ▮▮▮▮▮ ▮▮▮▮▮, indique como la conoce a qué tipo de relaciones mantiene con ella" RESPUESTA: "la conozco porque tengo un alto nivel de amistad y pertenecemos al mismo



grupo de amigos mi familia se lleva bien con ▮▮▮▮ inclusive las pocas veces que ▮▮▮▮ esta con su padre aprovechamos para salir y que se junten las familias, e inclusive alguna vez viajamos al extranjero".- PREGUNTA 6.- " dentro de la relación que usted ha observado entre GUSTAVO BORJA y su hija ▮▮▮▮ indique que es lo que usted ha visto".- RESPUESTA.- "he visto una relación amorosa mutua entre padre e hija yo siento enviada de la relación que tiene Gustavo y ▮▮▮▮ por el afecto y cariño que demuestran".- PREGUNTA 7.- "Usted dentro de este tiempo conoce a Gustavo y ▮▮▮▮ ha podido observar o escuchar algún tipo de inconveniente entre ellos dos".- RESPUESTA: "Nunca pese a que estado varias veces junto a ellos en diversas situaciones y lugares, la relación es muy cercana, y se mira claramente que Gustavo es como el confidente de ▮▮▮▮ que es una niña callada y tranquila".- PREGUNTA 8.- "Dentro de la relación ▮▮▮▮ Gustavo, usted ha podido ver y compartir varios momentos, usted ha visto que estos momentos son lo suficientes para competir una padre con una hija".- RESPUESTA: "evidentemente no son suficientes, y las 2 padres se buscan y una relación por teléfono no es saludable para la menor de edad, el padre casi no le puede ver estando tan cerca, esto teniendo en cuenta que ▮▮▮▮ vivió 2 años con su padre y creo que parar abruptamente esa relación creo que no es conveniente".- SEGUNDO TESTIGO: JUDITH DEL ROCIO CORTES LARA: PREGUNTA 5.- "En virtud de que usted conoce a la niña ▮▮▮▮, indique como la conoce, y que tipo de relación mantiene con ella".- RESPUESTA: "la conozco, en eventos sociales, cumpleaños, y le he visto una relación amorosa con su padre, ella es abnegada a su padre, diría que ellos dos tienen un perfil parecido padre e hija".- PREGUNTA 6.- "dentro de la relación que usted ha observado entre GUSTAVO BORJA y si hija ▮▮▮▮ indique que es lo que usted ha visto".- RESPUESTA: "lo que he visto, y me han comentado, esto es un padre muy responsable ella es alegre y contenta con su padre, he visto sufrimiento por que no siempre han podido compartir tiempo juntos, el padre quiere estar con la niña y su madre lo ha impedido".- PREGUNTA 7: "Usted dentro de este tiempo que conoce a Gustavo y ▮▮▮▮ ha podido observar o escuchar algún tipio de inconveniente entre ellos".- RESPUESTA: "el inconveniente que he sentido es que no han podido compartir juntos han querido ir a paseos y no ha podido el padre ir con su hija porque su madre se lo ha impedido, han tenido planificado algo y no han podido.- PREGUNTA 8.- "Dentro de la relación ▮▮▮▮ Gustavo, usted ha podido ver y compartir varios momentos, usted ha visto que estos momentos son lo suficiente para compartir el padre con una hija".- RESPUESTA: "definitivamente no, yo soy madre y he visto que es muy importante que el padre comparta con su hija eso afecta emocionalmente".- TERCER TESTIGO PAOLA BARBERIS GARZON: PREGUNTA 5.- "En virtud de que usted conoce a la niña ▮▮▮▮ indique como la conoce y que tipo de relaciones mantiene con ella".- RESPUESTA.- "la conozco porque es amigo de mi hijo, compartieron cerca de 2 años, ella es muy amorosa".- PREGUNTA 6: "dentro de la relación que usted ha observado entre GUSTAVO BORJA y su hija ▮▮▮▮ indique que es lo que usted ha visto".- RESPUESTA.- "es un caso atípico, yo a Gustavo le veo como mamá más que como papá, él tiene doble rol ante la ausencia de su madre, él ha ido al colegio y ha sido parte del grupo de mujeres a donde no van padres es muy responsable con su hija, él no le ha faltado nada a su hija, áal está pendiente de todo con su hija, él es la princesa y no le soldado él juega le papel de la madre, él es muy respetuosa, él juega y le educa a su hija, él no es grosero para nada con su hija".- PREGUNTA 7.- "Usted dentro de este tiempo que conoce a Gustavo y ▮▮▮▮ ha podido observar o escuchar algún tipo de inconveniente entre ellos dos".- RESPUESTA: "jamás, a mí me sorprendo el cambio porque yo le vi con el cambio de visitas, él no le podía ver normalmente a su hija, esto no es bueno para su hija, ▮▮▮▮ esta trastocada, y su actitud no es normal, esta como distante con su padre, tal vez por algún tipo de información que recibió".- PREGUNTA 8.- "Dentro de la relación ▮▮▮▮ Gustavo, usted ha podido ver y compartir varios momentos, usted ha visto que estos momentos son lo suficientes para compartir una padre con una hija".- RESPUESTA: "creo que la cosa debe ser lineal, los niños no son juguete de su padres, lo que debe hacerse es tratar de que se lleven bien los hijos con sus padres, el papá es papá y así va a ser hasta la muerte, la estabilidad emocional de un niño es la seguridad que le transmitan sus padres".- Adicionalmente se solicitó en escrito de fs. 331 la comparecencia del Equipo Técnico de esta Unidad Judicial de

conformidad con el art. 275 inciso primero, así pues ha comparecido la DRA MIROSLAVA ARMIJOS, Trabajadora Social.- NO comparece la Dra. Silvia García, Psicóloga, a quien la parte actora ha preguntado: 1.- "En su informe único que usted suscribió con la DRA SILVIA GARCIA, usted manifestó que es recomendable que la niña comparta con su padre, indique usted que es lo recomendable en este caso".- RESPUESTA: "Respecto a la pregunta como equipo es recomendable que el padre debe verle cada 8 o 15 días, porque hay casos que no les ven por años".- 2.- "En su conclusión 4 usted manifiesta que sé que se evidencia laso padre e hija, el cual debe mantenerse, y fortalecerse, como se pude mantener esto".- RESPUESTA: "El vínculo se da con la relación de los 2 con una regulación de visitas".- Finalmente, la parte actora, ha entregado en 5 fojas certificados de honorabilidad del actor de esta causa constante de 347 a 351.- Constan del proceso correos electrónicos (fs. 335, 336 y 337) emitidos por Helen Pérez, Consejera Estudiantil Primaria Internacional de la Fundación Colegio Americano de Quito, quien manifiesta: "Emy es una niña muy dulce, leal y solidaria, por ello el que Emy tome una decisión con esta gran carga de responsabilidad podría afectarle ya que el tomar esta decisión, estaría "fallando" a uno de sus dos padres, trazando su futuro y el de sus respectivas familias".- De fs. 363 y 364 consta la información proporcionada por la Universidad Técnica Particular de Loja, dando cuenta que la señora ANA MARIA RODRIGUEZ GRANJA se encuentra cursando la carrera de Ciencias de la Educación mención INGLES.- La parte demandada señora ANA RODRIGUEZ, en la audiencia de prueba manifestó que no ha anunciado ni evacuará medio probatorio alguno en dicha diligencia, sin embargo a fs. 318 ha impugnado el Informe de la Oficina Técnica de esta Unidad Judicial.- Siendo el estado de la (y, causa el de resolver, se considera: PRIMERO: Esta unidad Judicial tiene competencia para conocer y resolver la presente causa, competencia que se dio en virtud del sorteo de causas, obrante de fs. 5 de autos; y, en virtud de lo previsto en los Arts. 44, 175 de la Constitución de la República; Art. 255 del Código de la Niñez y Adolescencia; Art. 234.4., 171 del Código Orgánico de la Función Judicial; SEGUNDO: En la sustanciación de la presente demanda, por parte de esta Unidad Judicial, se han observado todos los requisitos legales, por lo que no se advierte omisión de solemnidades sustanciales, en virtud de lo cual se declara su validez, pues se le ha dado a la presente causa el trámite contemplado en el Código Orgánico de la Niñez y Adolescencia; así como no se han detectado vicios que provoquen una nulidad insanable ni han provocado indefensión, por lo que al apego de lo establecido en el art. 129 número 2 del Código Orgánico de la Función Judicial, en concordancia con el art. 130 números 1,2 y 8 ibídem; y, en aplicación al art. 169 de la Constitución de la República se declara válido todo el proceso.- TERCERO: El señor GUSTAVO ADOLFO BORJA PERUGACHI y la señora ANA MARIA RODRIGUEZ GRANJA, son los progenitores de la niña de nombres ███████████ ███████, por ende han legitimado su personería en esta causa.- CUARTO: INFORMES DE LOS ORGANOS AUXILIARES.- El Equipo Técnico de esta Unidad Judicial en su Informe Único (fs. 296 A 300), mismo que es gravitante, para emitir esta Resolución, manifiesta: "ANTECEDENTES: La señora Ana María Rodríguez, manifestó que se casó con Gustavo Borja y que él ...veía a la niña todos los fines de semana o cada 15 días hasta hace un año en que ella le inició juicio de alimentos porque él no permitió que la niña se quede más tiempo en Estados Unidos...y ahora la ve una vez al mes porque la niña no quiere ir...dice la ███████ es una niña nerviosa e insegura y sufre por la separación del padre".- El señor Gustavo Borja manifestó "...que durante los tiempos que ███████ ha permanecido en el país las visitas se han desarrollado todos los fines de semana y feriados previo acuerdo con la madre...".- La niña ███████ manifestó que: "...la mamá le dice que él puede ir a visitarla cuando quiera. Refiere que cuando está con el papá pasan bien, montan bicicleta, van a la piscina, ven películas, pasan en la casa de los abuelos maternos...No tiene problemas con las visitas y le gustaría pasar con el papá todo el fin de semana cada 15 días".- "SITUACION FAMILIAR: progenitores separados, la niña ███████ actualmente bajo el cuidado de su madre y en contacto frecuente con el padre. La niña se relaciona adecuadamente con ambos padres. ███████ si mantiene contacto con la familia ampliada paterna en las visitas con el padre y diariamente por el chat. Mantiene una relación adecuada con la tía paterna Alejandra".- "SITUACION DE VVIENDA: El padre vive en un departamento propio que le dieron sus padres, compuesto de dos dormitorios y demás ambientes

necesarios en el hogar tiene una habitación adecuada para ▇▇▇ "DIAGNOSTICO SOCIAL:
...La niña se relaciona apropiadamente con ambos padres y ambos entornos, materno y paterno
son convenientes para el bienestar de ▇▇▇ "DATOS RELEVANTES DE LA
ENTREVISTA PSICOLOGICA A LA NIÑA ▇▇▇ "Cuando voy
donde mi papi salimos a pasear en bicicleta, a la piscina, vemos películas, cocinamos o
visitamos a mis abuelos y mi tía, y a veces me deja con ella". "Yo siempre he querido visitar a
mi papi, solo que a veces pasan cosas importantes como el funeral de mi abuela, y no puedo ir,
pero él no se enoja por eso, y yo sí quiero seguirlo viendo cada quince días, y no hay ningún
problema en que mi familia tenga paseos esos días, paseamos por separado".-
"CONCLUSIONES: Progenitores divorciados, la niña actualmente permanece bajo el cuidado
de la madre, y en contacto frecuente con el padre, con quien ha vivido presuntamente por
temporadas. Los entornos sociales materno y paterno son adecuados para el desarrollo de
▇▇▇ le brindan bienestar y protección. De la evaluación psicológica se concluye que ninguno
de los padres denotan al momento rasgos psicopatológicos, pero que dados sus rasgos de
personalidad no han podido resolver sus nuevos roles paternos con la madurez suficiente, lo que
ha originado en la niña una evidente inestabilidad emocional, que debe ser tratada
profesionalmente, con la participación de sus progenitores. El contacto de la niña con su padre
se ha desarrollado por acuerdo entre progenitores y a voluntad de la madre. Se evidencia un
fuerte lazo afectivo entre padre e hija, vínculo que debe mantenerse y fortalecerse".- De fs. 366
a 376 consta el Informe emitido por la DINAPEN-P, en el cual el Sr. Bayron Ordoñez Escobar,
Cabo Segundo de Policía Agente Operativo de la DINAPEN-P, recomienda remitirse a la
versiones rendidas por los padres de la niña ▇▇▇ quienes
manifiestan: GUSTAVO ADOLFO BORJA PERUGACHI: "Después de separarme de la señora
ANA MARIA RODRIGUEZ GRANJA, siempre me he mantenido en contacto constante con mi
hija ▇▇▇ de 09 años de edad de edad, siempre he estado pendiente
de estar con ella las veces que la madre me lo ha permitido, una vez separados las vivitas
acordadas eran todos los fines de semana esto se interrumpió cuando la Sra. ANA MARIA
RODRIGUEZ GRANJA, solicitó que le emita un permiso de salida del país a mi hija...al yo
negarme en forma de retaliación me cambió el régimen de visitas de todos los fines de semana a
cada quince días insistiéndome que le dé el permiso de salida del país, tras mi constante negativa
a su pedido las visitas se han vuelto totalmente irregulares llegando al punto de no ver a mi hija
▇▇▇ hasta por un período de dos meses y medio. Como se puede
evidenciar debido al largo período que mi hija ha compartido tanto conmigo como con mi
familia se ha creado un lazo muy fuerte. Constituyéndose el único período en el cual mi hija
pudo disfrutar de una estabilidad que la madre no le ha podido brindar".- ANA MARIA
RODRIGUEZ GRANJA: "...Las veces que mi hija se ha ido con su padre, por visitas, a más de
dejarla encargada con los abuelos paternos y su tía, sufre maltrato psicológico, porque se
encarga de desprestigiarme y atentar contra mi dignidad calificándome como una mala
madre...A mi hija le brindo todo el amor y cariño que requiere, especialmente las atenciones y
la dedicación para su desarrollo normal, lo que no acontece con su padre, lo que se refleja en sus
estudios por ser una excelente estudiante.- Del mismo modo quiero dejar constancia que en caso
de que nos mudemos con mi hija a los Estados Unidos por trabajo, el papá de mi hija podrá
visitarla cuando pueda o mi hija puede venir al Ecuador si ella así lo deseara".- El Juez ha
procedido a escuchar de manera reservada a la niña ▇▇▇ SEXTO:
1.- La Constitución Política del Ecuador, en su art. 44 indica que: "El Estado, la sociedad y la
familia promoverán de forma prioritaria el desarrollo integral de las niñas, niños y adolescentes,
y asegurarán el ejercicio pleno de sus derechos, se atenderá al principio de su interés superior y
sus derechos prevalecerán sobre los de las demás personas. Las niñas, niños y adolescentes
tendrán derecho a su desarrollo integral, entendido como proceso de crecimiento, maduración...,
en un entorno familiar, escolar, social y comunitario de afectividad y seguridad..."; en su Art.
45.- "Las niñas, niños y adolescentes gozarán de los derechos comunes al ser humano, además
de los específicos de su edad. ... Las niñas, niños y adolescentes tienen derecho a la integridad
física y psíquica; ...a tener una familia y disfrutar de la convivencia familiar y comunitaria....".
"Art. 10. Las personas, comunidades, ... son titulares y gozarán de los derechos garantizados en

la Constitución y en los instrumentos internacionales ...” “Art. 11. El ejercicio de los derechos se regirá por los siguientes principios: 1. Los derechos se podrán ejercer, promover y exigir de forma individual o colectiva ante las autoridades competentes, estas autoridades garantizarán su cumplimiento. 2. Todas las personas son iguales y gozarán de los mismos derechos, deberes y oportunidades. Nadie podrá ser discriminado por razones de..., que tenga por objeto o resultado menoscabar o anular el reconocimiento, goce o ejercicio de los derechos. La ley sancionará toda forma de discriminación. 3. Los derechos y garantías establecidos en la Constitución y en los instrumentos internacionales de derechos humanos serán de directa e inmediata aplicación por y ante cualquier servidora o servidor público, administrativo o judicial, de oficio o a petición de parte. Para el ejercicio de los derechos y garantías constitucionales no se exigirá condiciones o requisitos que no estén establecidos en la Constitución o la ley. Los derechos serán plenamente justiciables. No podrá alegarse falta de norma jurídica para justificar su violación o desconocimiento, para desechar la acción por esos hechos ni para negar su reconocimiento. 4. Ninguna norma jurídica podrá restringir el contenido de los derechos ni de las garantías constitucionales. 5. En materia de derechos y garantías constitucionales, las servidoras y servidores públicos, administrativos o judiciales, deberán aplicar la norma y la interpretación que más favorezcan su efectiva vigencia...”.- 6.2.- El Art. 83.1.- Ibídem, establece que son deberes y responsabilidades de las y los ecuatorianos, entre otros: “ ... 1.- Acatar y cumplir la Constitución, la ley y las decisiones legítimas de autoridad competente...”       6.3.- La Convención sobre los Derechos del Niño, en vigor desde el dos de septiembre de mil novecientos noventa, en la Declaración Universal de Derechos Humanos y en los pactos internacionales de derechos humanos, indica que toda persona tiene todos los derechos y libertades enunciados en ellos, sin distinción alguna, por motivos de raza, color, sexo, idioma, religión, opinión política o de otra índole, origen nacional o social, posición económica, nacimiento o cualquier otra condición. Proclaman que la infancia tiene derecho a cuidados y asistencia especiales; y, que la familia, como grupo fundamental de la sociedad y medio natural para el crecimiento y el bienestar de todos sus miembros, y en particular de los niños, debe recibir la protección y asistencia necesarias para poder asumir plenamente sus responsabilidades dentro de la comunidad; por tanto reconoce, que el niño, para el pleno y armonioso desarrollo de su personalidad, debe crecer en el seno de la familia, en un ambiente de felicidad, amor y comprensión, preparándole para una vida independiente en sociedad y, en particular, en un espíritu de paz, dignidad, tolerancia, libertad, igualdad y solidaridad. Esta convención tiene presente la necesidad de proporcionar al niño una protección especial, enunciada en la Declaración de Ginebra de 1924 sobre los Derechos del Niño y en la Declaración de los Derechos del Niño adoptada por la Asamblea General el 20 de noviembre de 1959, y reconocida en la Declaración Universal de Derechos Humanos, en el Pacto Internacional de Derechos Civiles y Políticos (en particular, en los artículos 23 y 24), en el Pacto Internacional de Derechos Económicos, Sociales y Culturales (en particular, en el artículo 10) y en los estatutos e instrumentos pertinentes de los organismos especializados y de las organizaciones internacionales que se interesan en el bienestar del niño. Teniendo presente que, como se indica en la Declaración de los Derechos del Niño, "el niño, por su falta de madurez física y mental, necesita protección y cuidado especiales, incluso la debida protección legal, tanto antes como después del nacimiento; por tanto, dice: “Artículo 1.- Para los efectos de la presente Convención, se entiende por niño todo ser humano menor de dieciocho años de edad, salvo que, en virtud de la ley que le sea aplicable, haya alcanzado antes la mayoría de edad. Artículo 2.- 1. Los Estados Partes respetarán los derechos enunciados en la presente Convención y asegurarán su aplicación a cada niño sujeto a su jurisdicción, sin distinción alguna, independientemente de la raza, el color, el sexo, el idioma, la religión, la opinión política o de otra índole, el origen nacional, étnico o social, la posición económica, los impedimentos físicos, el nacimiento o cualquier otra condición del niño, de sus padres o de sus representantes legales. 2. Los Estados Partes tomarán todas las medidas apropiadas para garantizar que el niño se vea protegido contra toda forma de discriminación o castigo por causa de la condición, las actividades, las opiniones expresadas o las creencias de sus padres, o sus tutores o de sus familiares. Artículo 3.1. En todas las medidas concernientes a los niños que tomen las instituciones públicas o privadas de

bienestar social, los tribunales, las autoridades administrativas o los órganos legislativos, una consideración primordial a que se atenderá será el interés superior del niño. 2. Los Estados Partes se comprometen a asegurar al niño la protección y el cuidado que sean necesarios para su bienestar, teniendo en cuenta los derechos y deberes de sus padres, tutores u otras personas responsables de él ante la ley y, con ese fin, tomarán todas las medidas legislativas y administrativas adecuadas. Artículo 5. Los Estados Partes respetarán las responsabilidades, los derechos y los deberes de los padres o, en su caso, de los miembros de la familia ampliada o de la comunidad, según establezca la costumbre local, de los tutores u otras personas encargadas legalmente del niño de impartirle, en consonancia con la evolución de sus facultades, dirección y orientación apropiadas para que el niño ejerza los derechos reconocidos en la presente Convención. Artículo 9. 1. Los Estados Partes velarán por que el niño no sea separado de sus padres contra la voluntad de éstos, excepto cuando, a reserva de revisión judicial, las autoridades competentes determinen, de conformidad con la ley y los procedimientos aplicables, que tal separación es necesaria en el interés superior del niño. Tal determinación puede ser necesaria en casos particulares, por ejemplo, en los casos en que el niño sea objeto de maltrato o descuido por parte de sus padres o cuando éstos viven separados y debe adoptarse una decisión acerca del lugar de residencia del niño. 2. En cualquier procedimiento entablado de conformidad con el párrafo 1 del presente artículo, se ofrecerá a todas las partes interesadas la oportunidad de participar en él y de dar a conocer sus opiniones. 3. Los Estados Partes respetarán el derecho del niño que esté separado de uno o de ambos padres a mantener relaciones personales y contacto directo con ambos padres de modo regular, salvo si ello es contrario al interés superior del niño. Artículo 14.1. Los Estados Partes respetarán el derecho del niño a la libertad de pensamiento, de conciencia y de religión. 2. Los Estados Partes respetarán los derechos y deberes de los padres y, en su caso, de los representantes legales, de guiar al niño en el ejercicio de su derecho de modo conforme a la evolución de sus facultades." SÉPTIMO: En razón de que los padres no han llegado a un acuerdo respecto a la modificación de visitas para su hija, y tomando en consideración que la señora ANA MARIA RODRIGUEZ GRANJA en la audiencia correspondiente ha manifestado que: "...en este caso nos atendremos exclusivamente a la decisión de la niña..."; así como la mencionada menor de edad, al Equipo Técnico de estas Unidad Judicial ha manifestado que: "Cuando voy donde mi papi salimos a pasear en bicicleta, a la piscina, vemos películas, cocinamos o visitamos a mis abuelos y mi tía, y a veces me deja con ella". "Yo siempre he querido visitar a mi papi, solo que a veces pasan cosas importantes como el funeral de mi abuela, y no puedo ir, pero él no se enoja por eso, y yo si quiero seguirlo viendo cada quince días, y no hay ningún problema en que mi familia tenga paseos esos días, paseamos por separado"; además de que los testigos de la parte actora han sido coherentes y concordantes en su declaraciones, pues al responder a la PREGUNTA 7.- "Usted dentro de este tiempo conoce a Gustavo y ▆▆▆▆ ha podido observar o escuchar algún tipo de inconveniente entre ellos dos".- RESPUESTAS: "Nunca pese a que estado varias veces junto a ellos en diversas situaciones y lugares, la relación es muy cercana, y se mira claramente que Gustavo es como el confidente de ▆▆▆▆ que es una niña callada y tranquila"; "el inconveniente que he sentido es que no han podido compartir juntos han querido ir a paseos y no ha podido el padre ir con su hija porque su madre se lo ha impedido, han tenido planificado algo y no han podido"; y, "jamás, a mí me sorprendo el cambio porque yo le vi con el cambio de visitas, él no le podía ver normalmente a su hija, esto no es bueno para su hija, ▆▆▆▆ esta trastocada, y su actitud no es normal, esta como distante con su padre, tal vez por algún tipo de información que recibió".- Finalmente, la DRA MIROSLAVA ARMIJOS, Trabajadora Social del Equipo Técnico de esta Unidad Judicial al responder a las aclaraciones solicitadas por el actor cuando se le pregunta: 1.- "En su informe único que usted suscribió con la DRA SILVIA GARCIA, usted manifestó que es recomendable que la niña comparta con su padre, indique usted que es lo recomendable en este caso".- RESPONDE: "Respecto a la pregunta como equipo es recomendable que el padre debe verle cada 8 o 15 días, porque hay casos que no les ven por años".- 2.- "En su conclusión 4 usted manifiesta que sé que se evidencia laso padre e hija, el cual debe mantenerse, y fortalecerse, como se pude mantener esto".- RESPONDE: "El vínculo se da con la relación de los 2 con una regulación de visitas".- Al hacer un análisis sucinto de la prueba aportada por las

partes procesales, de conformidad con las reglas de la sana crítica, este juez, de conformidad con el art. 44, 45 de la Constitución de la República del Ecuador; art. 11, 21, 122, 124 del Código Orgánico de la Niñez y Adolescencia; y, art. 19 inciso tercero del Código Orgánico de la Función Judicial, en uso de sus facultades RESUELVE: 1.- Aceptar la demanda de Modificación del Régimen Visitas presentada por el señor GUSTAVO ADOLFO BORJA PERUGACHI en contra de la madre de su hija señora ANA MARIA RODRIGUEZ GRANJA.- 2.- Las visitas del padre hacia la niña ███████████████████ serán de la siguiente manera: a.- El padre de la menor de edad, retirará a su hija del domicilio de la madre, cada quince días, los sábados a las 10h00 y la restituirá al domicilio materno el día domingo a las 16h00; b.- El padre podrá compartir con su hija antes nombrada el día del padre en el horario de 09h00 a 18h00; c.- El padre compartirá con su hija los días feriados anuales en forma alternada, empezando por el feriado del 10 de agosto del 2015 y continuando así en forma alternada entre los progenitores; d.- Las vacaciones de Navidad y Año nuevo serán compartidas de forma alternada, empezando las navidades de esta año con la madre y el fin de año con el padre; el siguiente año la navidad con el padre y el año nuevo con la madre y así consecutivamente variando dichas festividades entre los progenitores.- e.- Sobre las vacaciones de fin de año lectivo, y por conveniencia de la niña, éstas serán coordinadas entre los padres de la menor de edad.- Este nuevo régimen de visitas las hará el padre de la menor de edad en forma personal y no por interpuesta persona y en la forma aquí establecida, con la finalidad de que se conserve y mantenga la relación parento filial de la hija con su padre, de conformidad con el art. 22, 118, 122 y 124 del Código Orgánico de la Niñez y Adolescencia, así como para que se relacione con la familia paterna ampliada.- Intervenga la OFICINA TECNICA de esta Unidad Judicial, para que informen en forma regular, en dos semestres, durante un año, respecto al régimen de visitas que se encuentra en conocimiento de esta Unidad Judicial.- Se conmina a las partes procesales dar cumplimiento con el régimen de visitas aquí determinado.- CAUSA 39177-2013.- NOTIFIQUESE.- f).- JACOME JARAMILLO PABLO ALEJANDRO, JUEZ DE LA UNIDAD JUDICIAL; .

Lo que comunico a ustedpara los fines de ley.

DR. DARWIN PATRICIO LESCANO LEON
SECRETARIO DE LA UNIDAD JUDICIAL TERCERA DE LA FAMILIA, MUJER, NIÑEZ
Y ADOLESCENCIA

# EXHIBIT F

**REPUBLIC OF ECUADOR**

www.funcionjudicial-pichincha.gob.ec

Case No.: 17203-2015-10121                    Mailbox No.: **2617**

Quito, Wednesday, December 2nd, 2015

TO: BORJA PERUGACHI GUSTAVO ADOLFO

ATTORNEY-AT-LAW: ARBOLEDA ESPINEL ENRIQUE ALBERTO

Within the Special Case No. 17203-2015-10121 that follows RODRIGUEZ GRANJA ANA MARIA against BORJA PERUGACHI GUSTAVO ADOLFO, there is the following:

**REPORTING JUDGE: DR. MANUEL ANTONIO PACHACAMA ONTANEDA, JUDGE**
**PROVINCIAL COURT OF JUSTICE OF PICHINCHA, CHAMBER OF FAMILY, WOMEN, CHILDHOOD, ADOLESCENCE AND OFFENDER TEENAGERS OF THE PROVINCIAL COURT OF PICHINCHA.-** Quito, Wednesday, December 2nd, 2015 at 14h22. WHEREAS.- The present case is acknowledge by: ANTONIO PACHACAMA ONTENADA, BOLIVAR SANDRINO LEMA QUINGA AND MARIO FERNANDO GUERRERO, as Principal Judges, therefore the Court of the Chamber of Family, Women, Childhood, Adolescence and Offender Teenagers of the Provincial Court of Pichincha, is duly integrated by those who are invested with Jurisdiction according to the Constitution and the Law.- At the case of Permission to leave the country, initiated by ANA MARIA RODRIGUEZ GRANJA against GUSTAVO ADOLFO BORJA PERUGACHI, the actor disagrees with the Ruling issued by the Judge of the Third Specialized Judicial Unit of Family, Women, Childhood and Adolescence of Quito, Pichincha, and therefore appealed.

Once the jurisdiction in this Court is settled by Law, it is considered: FIRST.- BACKGROUND AND OBJECT OF THE RULING IN THE SECOND INSTANCE.- 1.1.- On page 14 ANA MARIA RODRIGUEZ GRANJA appears, in her capacity as mother of the child ███████████████ and in demand it states that "…that for holidays at the end of the school year, with my expressed daughter

███████████████████████ we want to make a trip to the city of Miami, United States, which will take place from July 21 to August 26, 2015, who will travel with the appearing one, staying at La Quinta Inn Miami Airport North, located at 7401 Northwest 36th Street, Miami Florida, United States of America, from July 21 to 27, 2017 and from July 27 to August 16 in the city of Orlando, United States of America at the Knights In Maingate Hotel, located at 7475 West Irlo Bronson Memorial Highway Celebration Kissimmee Florida FL 34747; and from August 16 to 26, 2015 in the city of Fort Lauderdale Florida United States of America, at the Universal Palm Hotel, located at 4900 Powrline Road Fort Lauredal, Florida FL, 33309, United States of America, in accordance with the reservation itinerary attached. It is the case that the father of my daughter, GUSTAVO ADOLFO BORJA PERUGACHI, refuses to grant the permission to leave the country for school holidays. The applicant works in this city of Quito, in the Miami Group Company as Sales Manager, a company located in the Parish of Cumbaya, Canton of Quito, Province of Pichincha, located in La Viña neighborhood, Street Camino a la Viña no. 12, as evidenced by the attached document of the RSI, and our daughter ████████████████ is studying at the American School Foundation of Quito, who will take the sixth year of basic education in the 2015-2016 school year, so there is no danger of not returning to Ecuador. In virtue and under Art. 110 second paragraph of the Code of Childhood and Adolescence in force, and in the quality previously invoked, goes so that after the corresponding legal procedure and once the defendant cited his authorization granted by the Authority to leave the country of my child ███████████████ may be absent from the country bound for Miami United States of America ... ".- 1.2.- Admitted to process this claim in order dated July 14, 2015, 09:10 (fs.16), it is available to quote the defendant GUSTAVO ADOLFO BORJA PERUGACHI, who appears to the case in writing included at page 19 of the records, in which he indicates judicial domicile for his notifications. - The parties have been summoned to the conciliation and answering hearing, which takes place on Tuesday, August 4, 2015, as evidenced by the minutes at page 23 of the records; and, concluded the substantiation of the case the first-level Judge, issues the corresponding ruling,

in which he denies the claim raised by ANA MARIA RODRIGUEZ GRANJA; of which the plaintiff, feeling unhappy, files appeals, in writing included at pages 84 to 86, which has been granted in an order dated October 8, 2015 at 16h00 (pg. 87); which has allowed the knowledge of this Court. SECOND.- PROCEDURAL BUDGETS.- a) In accordance with the provisions of article 175 of the Constitution of the Republic of Ecuador and the provisions of article 208.1 of the Organic Code of the Judicial Function, the Court of this Chamber is competent to know and decide on the appeal filed. b) In the substantiation of the case, it is seen that the basic guarantees that assure the right to due process, indicated by article 76 of the Constitution of the Republic of Ecuador, have been complied with. - c) As provided in Article 346 of the Code of Civil Procedure have observed the substantial solemnities common to all cases and instances, which influence or may influence the decision of the case, so it is not appreciated that it should be declared nullity proceedings in the present case and in its place the validity of the process is recognized.- TECERA.- AGREEMENT OF THE PROCEDURAL PARTIES.- Friday November 27, 2015, 10h59 (page 4 of the notebook of this instance), in accordance with the provisions of article 280 of the Organic Code of Childhood and Adolescence, with the appearance of the procedural parts, in which the Court suggests the possibility of reaching a conciliatory agreement that allows to put an end to this process, taking into consideration the dates for which it has been requested the permission to leave the country; and, in order to effectively protect the well-being of the child ███████████████ and the due observance of the universal principle of the best interests of children and adolescents set forth in article 44 of the Constitution of the Republic of Ecuador; the parties have freely and voluntarily reached the agreement that appears in the respective minutes of the hearing and that has been signed by the parties. FOURTH. DECISION.- Based on the provisions contained in articles 44 and 45 of the Constitution of the Republic of Ecuador, article 11 of the Organic Code of Childhood and Adolescence, the Court of this court, RESOLVES, partially accepts the appeal interposed by ANA MARIA RODRIGUEZ GRANJA and approve the agreement reached by the parties in relation to the Permissions to leave the Country that are the subject of this

action, and which will be as follows: "The parties, by mutual agreement, have agreed to reach the following agreement that will be applicable to judicial cases No. 10121-2015 and 39177-2013 that are filed on appeal in the Provincial Court of Justice of Pichincha: 1.- SCHOOL HOLIDAYS END OF YEAR will be THE FIRST FIFTEEN DAYS WITH THE FATHER; and, THE LAST FIFTEEN DAYS WITH THE MOTHER, the interval of the holidays WITH THE MOTHER. 2.- THE HOLIDAYS ARE COMPLETE, from the beginning of the holiday from 18h00 until the final day of the holiday 18h00. 3. PERMISSIONS TO LEAVE THE COUNTRY will be authorized for both the mother and the father in the periods of the holidays that correspond to each one. 4.- ANA MARIA BORJA RODRIGUEZ, expressly requests that the PROHIBITION OF DEPARTURE OF THE COUNTRY that weighs on GUSTAVO ADOLFO BORJA PERUGACHI be lifted, that he will carry out in the food case that substance in the Third Unit of the Family, Women, Childhood and Adolescence of the Canton Quito No. 39177-2013, and that lifting is accepted without objection. 5. The visits of the father every fifteen days that are regulated in Case No. 30177-2013, at the time of delivery on Sunday is modified at 18h00. The parties request that the Chamber approve this agreement by ruling and a certified copy be sent to the process No. 39177-2013 treated by this Mass Appellate Chamber. "Regarding the other processes, under the principle of speed and procedural economy provided in Article 169 of the Constitution of the Republic of Ecuador, by the Secretariat, obtain certified copies of this order and send it by means of an attentive letter to the Judge Rapporteur of the case that is substantiated in this Chamber and that is related to the Visiting Regulations. Regarding the lifting of the prohibition to leave the country, this must be attended by the first level Judge, in which said measure has been established based on this agreement. - In the terms of this ruling, the appeal filed is upheld.- Return the file to the Judicial Unit of origin, for the purposes of law.-
NOTIFY.-

f) DR.MANUEL ANTONIO PACHACAMA ONTANEDA, JUDGE Dr. BOLIVAR SANDRINO LEMA QUINGA, JUDGE; DR. MARIO FERNANDO GUERRERO GUTIERREZ, JUDGE;

I hereby notify to the appropriate purposes.
[SEAL: (illegible signatures)]
ROBERTO ANTONIO OTAVALO CASTRO
SECRETARIAT OF THE CHAMBER OF FAMILY, WOMEN, CHILDHOOD,
ADOLESCENCE AND OFFENDER TEENAGERS OF THE COURT

In the Metropolitan District of Quito, today, Friday, November 26, 2015, at 10:54, before the Doctors Manuel Antonio Pachacama Ontaneda, Judge of Substantiation of the Court by the Judges Drs. Mario Fernando Guerrero Gutierrez and Bolivar Lema Quinga, of the Chamber of the Family, Women, Childhood, Adolescence and Adolescents of the Provincial Court of Justice of Pichincha, and undersigned Secretary Rapporteur who certifies, appear:. ANA MARIA RODRIGUEZ GRANJA with ID no.: 171128403-2 and Certificate of Voting No. 009-0200, accompanied by her lawyer Luis Alfonso Castillo Velasco, with Bar Registration No. 17-1985-6; and GUSTAVO ADOLFO BORJA PERUGACHI with ID No.: 171628771-7 and Certificate of Voting No. 021-0112 accompanied by his lawyer Enrique Alberto Arboleda Espinel, with C.A.P Registration No. 6339, in order to comply with the provisions of the order dated November 23, 2015, at 10h59; to the effect, being the day and hour indicated, the hearing is initiated; the parties are requested by the Court to exist if a form of conciliation is observed, in which, it is accepted and they say: "The parties, by mutual agreement, have agreed to reach the following agreement that will be applicable to judicial cases No. 10121-2015 and 39177-2013 that is on appeal in the Provincial Court of Justice of Pichincha: 1. SCHOOL HOLIDAYS AT THE END OF THE YEAR WILL BE THE FIRST FIFTEEN DAYS WITH THE FATHER; and THE LAST FIFTEEN DAYS WITH THE FATHER, The interval of the holidays WITH THE MOTHER. 2. THE HOLIDAYS ARE COMPLETE, since the beginning of the holiday 18:00 until the end of the holiday 18:00. 3. THE PERMISSION TO LEAVE THE COUNTRY will be authorized for both the mother and the father in the periods of the holidays that correspond to each one. 4.- ANA MARIA BORJA RODRIGUEZ, expressly requests that the PROHIBITION OF DEPARTURE OF THE COUNTRY that weighs on GUSTAVO ADOLFO BORJA PERUGACHI be lifted, that he will carry out in the food case that substance in the Third Unit of the Family, Women, Childhood and Adolescence of the Canton Quito No. 39177-2013, and that lifting is accepted without objection. 5. The visits of the father every fifteen days that are regulated in Case No. 30177-2013, at the time of delivery on Sunday is modified at 18h00. The parties request

that the Chamber approve this agreement by ruling and a certified copy be sent to the Case No. 39177-2013 treated by this Mass Appellate Chamber."

With the manifested by the procedural parties together, sign for constancy in unity of act with the Judge of Substantiation, Judges aforementioned and undersigned Reporting Secretary that certifies.-

(illegible signature)

**Manuel Pachacama Ontaneda**

**REPORTING JUDGE**

(illegible signature)

Mario Guerrero Gutierrez

JUDGE

(illegible signature)

Bolivar Lema Quinga

JUDGE

(illegible signature)

Ana M. Rodriguez Granja

Appearing Party

(illegible signature)

Gustavo A. Borja Perugachi

Appearing Party

(illegible signature)

Luis A. Castillo Velasco

(illegible signature)

Enrique A. Arboleda Espinel

(illegible signature)

**Roberto A. Otavalo Castro**

**REPORTING SECRETARY**

*N. Archivo*

**REPUBLICA DEL ECUADOR**
www.funcionjudicial-pichincha.gob.ec

Juicio No: 17203-2015-10121

Casilla No: **2617**

Quito, miércoles 2 de diciembre del 2015
A: BORJA PERUGACHI GUSTAVO ADOLFO
Dr./Ab.: ARBOLEDA ESPINEL ENRIQUE ALBERTO

En el Juicio Especial No. 17203-2015-10121 que sigue  RODRIGUEZ GRANJA ANA
MARIA en contra de BORJA PERUGACHI GUSTAVO ADOLFO, hay lo siguiente:

**JUEZ PONENTE:  DR. MANUEL ANTONIO PACHACAMA ONTANEDA, JUEZ**
**CORTE PROVINCIAL DE JUSTICIA DE PICHINCHA. - SALA DE FAMILIA,
MUJER, NIÑEZ, ADOLESCENCIA Y ADOLESCENTES INFRACTORES DE LA
CORTE PROVINCIAL DE PICHINCHA.-** Quito, miércoles 2 de diciembre del 2015, las
14h22.- VISTOS.- Avocan conocimiento de la presente causa los señores Doctores: ANTONIO
PACHACAMA ONTENADA, BOLIVAR SANDRINO LEMA QUINGA Y MARIO
FERNANDO GUERRERO, en calidad de Jueces Titulares, por lo que el Tribunal de la Sala de
Familia, Mujer, Niñez, Adolescencia y Adolescentes Infractores de la Corte Provincial de
Justicia de Pichincha, se está debidamente integrado por quienes se encuentran investidos de
Jurisdicción en forma constitucional y legal.- En el juicio de Autorización de Salida del País,
iniciado por la señora ANA MARIA RODRIGUEZ GRANJA en contra del señor GUSTAVO
ADOLFO BORJA PERUGACHI, la parte accionante inconforme con la Resolución dictada por
el señor Juez de la Unidad Judicial Especializada Tercera de la Familia, Mujer, Niñez y
Adolescencia del Cantón Quito, Provincia de Pichincha, interpone recurso de apelación.-
Radicada la competencia en este Tribunal por el sorteo de Ley, se considera: PRIMERO.-
ANTECEDENTES Y OBJETO DE LA RESOLUCIÓN EN SEGUNDA INSTANCIA.- 1.1.- A
fojas 14 comparece la señora ANA MARIA RODRIGUEZ GRANJA, en su calidad de madre de
la menor ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ y en demanda manifiesta que "… que por vacaciones
de fin de año escolar, con mi expresada hija ▮▮▮▮▮▮▮▮▮▮queremos realizar
un viaje a la ciudad de Miami, estados Unidos, el que se efectuará del 21 de julio al 26 de agosto
del 2015,mquien viajará con la compareciente, alojándonos en La quinta Inn Miami Airport
North, ubicado en 7401 Northwest 36th Street, Miami Florida, estados Unidos de Norteamérica,
del 21 al 27 de julio del 2015 y del 27 de julio al 16 de agosto en la ciudad de Orlando Estados
Unidos de Norteamérica en el Hotel Knights In Maingate, ubicado en 7475 West Irlo Bronson
Memorial Highway Celebration Kissimmee Florida FL 34747; y del 16 al 26 de agosto del 2015
en la ciudad de Fort Lauderdale Florida Estados Unidos de Norteamérica, en el Hotel Universal
Palm Hotel, ubicado en 4900 Powrline Road Fort Lauredal, Florida FL, 33309, estados Unidos
de Norteamérica, de acuerdo con el itinerario de reservaciones que adjunto. Es el caso que el
padre de mi hija señor GUSTAVO ADOLFO BORJA PERUGACHI, se niega a conceder la
autorización de salida del País por motivo de vacaciones escolares. La compareciente laboro en
esta ciudad e Quito, en la Empresa Miami Group en calidad de Jefe de Ventas, empresa ubicada
en la Parroquia de Cumbayá, del Cantón Quito, Provincia de Pichincha, ubicado en el barrio La
Viña, calle Camino a la Viña Número 12, como consta del documento adjunto del SRI, y nuestra
hija ▮▮▮▮▮▮▮▮▮▮estudia en la Fundación Colegio Americano de Quito,
quien cursará en el año lectivo 2015-2016 el Sexto Año de Educación Básica, por tanto no hay
peligro de no retornar al Ecuador. En tal virtud y al amparo del Art. 110 inciso segundo del
Código de la Niñez y Adolescencia en vigencia, y en la calidad antes invocada, acude a fin de
que luego del trámite legal que corresponda y una vez citado el demandado su Autoridad
conceda la autorización de salida del País de mi mina menor ▮▮▮▮▮▮▮▮▮▮
pueda ausentarse del país con destino a Miami Estados Unidos de Norteamérica…".- 1.2.-

Admitida a trámite esta demanda en providencia de fecha 14 de julio del 2015, las 09h10 (fs. 16), se dispone citar al demandado señor Gustavo Adolfo Borja Perugachi, quien comparece a juicio en escrito de fs. 19 de los autos, en el que señala domicilio judicial para sus notificaciones.- Convocadas las partes a la audiencia de conciliación y contestación, la misma que se lleva a efecto el martes 4 de agosto del 2015, conforme se desprende del acta de fs. 23, de los autos; y, concluida la sustanciación de la causa el señor Juez de primer nivel, expide la resolución correspondiente, en la que niega la demanda planteada por la señora Ana María Borja Rodríguez; de la cual la accionante al sentirse inconforme, interpone recurso de apelación, en escrito de fs. 84 a 86, el cual ha sido concedido en providencia de fecha 8 de octubre del 2015, las 16h00 (fs. 87); lo cual ha permitido el conocimiento de este Tribunal. SEGUNDA.- PRESUPUESTOS PROCESALES.- a) Conforme a lo dispuesto por el artículo 175 de la Constitución de la República del Ecuador y a lo previsto en el artículo 208.1 del Código Orgánico de la Función Judicial, el Tribunal de ésta Sala es competente para conocer y resolver sobre el recurso de apelación planteado.- b) En la sustanciación de la causa, se aprecia que se ha cumplido con las garantías básicas que aseguran el derecho al debido proceso, señaladas por el artículo 76 de la Constitución de la República del Ecuador.- c) Conforme dispone el artículo 346 del Código de Procedimiento Civil se han observado las solemnidades sustanciales comunes a todos los juicios e instancias, que influyan o puedan influir en la decisión de la causa; por lo que no se aprecia que deba ser declarada nulidad procesal alguna en el presente caso y en su lugar se reconoce la validez del proceso.- TERCERA.- ACUERDO DE LAS PARTES PROCESALES.- Con fecha viernes 27 de noviembre del 2015, a las 10h54 minutos, se realiza la Audiencia fijada en providencia de fecha 23 de noviembre del 2015 2015, las 10h59 minutos (fs. 4 del cuaderno de esta instancia), de conformidad con lo dispuesto en el artículo 280 del Código Orgánico de la Niñez y Adolescencia, con la comparecencia de las partes procesales, en el que el Tribunal sugiere la posibilidad de llegar a un acuerdo conciliatorio que permita poner fin a este proceso, tomando en consideración que, las fechas por la que ha sido solicitada la Autorización de Salida del País; y, a efecto de precautelar en forma efectiva el bienestar de la niña ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮ y el cumplimiento debido del principio universal de interés superior de los niños/niñas y adolescentes previsto en el artículo 44 de la Constitución de la República del Ecuador; las partes en forma libre y voluntaria han llegado al acuerdo que consta en la respectiva acta de audiencia y que ha sido suscrita por las partes.- CUARTA. DECISIÓN.- Con fundamento en las disposiciones contenidas en los artículos 44 y 45 de la Constitución de la República del Ecuador, artículo 11 del Código Orgánico de la Niñez y Adolescencia, el Tribunal de esta Sala, RESUELVE, aceptar parcialmente el recurso de apelación interpuesto por la señora Ana María Rodríguez Granja y aprobar el acuerdo al que han llegado las partes en relación a las Autorizaciones de Salida del País que son objeto de la presente acción, y que serán como a continuación se detalla: "Las partes de común acuerdo, han convenido en llegar al siguiente acuerdo que será aplicable a las causas judiciales No. 10121-2015 y 39177-2013 que se encuentra en apelación en la Corte Provincial de Justicia de Pichincha: 1.- LAS VACACIONES ESCOLARES DE FIN DE AÑO serán LOS PRIMEROS QUINCE DIAS CON EL PADRE; y, LOS ULTIMOS QUINCE DIAS CON EL MADRE, el intermedio de las vacaciones CON LA MADRE. 2.- LOS FERIADOS SON COMPLETOS, desde el inicio del feriado las 18h00 hasta el día final del feriado 18h00. 3.- LOS PERMISOS DE SALIDA PAÍS se van autorizar tanto para la madre como para el padre en los periodos de las vacaciones que a cada uno les corresponden. 4.- La señora ANA MARIA RODRIGUEZ GRANJA, solicita expresamente que se levante LA PROHIBICION DE SALIDA DEL PAIS que pesa sobre el señor GUSTAVO ADOLFO BORJA PERUGACHI, que lo realizara en el juicio de alimentos que se sustancia en la Unidad Tercera de la Familia, Mujer, Niñez y Adolescencia del Cantón Quito No. 39177-2013, y se acepte dicho levantamiento sin objeción alguna. 5.- Las visitas cada quince días del padre que se encuentran reguladas dentro del Juicio No. 30177-2013, en el horario de entregue el día domingo se modifica a las 18h00. Las partes solicitamos que la Sala apruebe el presente acuerdo mediante resolución y una copia certificada sea remitida al proceso No. 39177-2013 que tramita esta misma Sala en apelación". Respecto de los otros procesos, bajo el principio de celeridad y economía procesal previstos en el artículo 169 de la Constitución de la

República del Ecuador, por Secretaría obténgase copias certificadas de este auto y remítase mediante atento Oficio al señor Juez Ponente de la causa que se sustancia en ésta Sala y que tiene relación con el Régimen de Visitas.- En cuanto al levantamiento de la prohibición de salida del País, ésta deberá ser atendida por parte de la señora Jueza de primer nivel, en la que se haya dispuesto dicha medida en base a este acuerdo.- En los términos de ésta resolución queda atendido el recurso de apelación interpuesto.- Devuélvase el expediente a la Unidad Judicial de origen, para los fines de ley.- NOTIFÍQUESE.- f).- DR. MANUEL ANTONIO PACHACAMA ONTANEDA, JUEZ; DR. BOLIVAR SANDRINO LEMA QUINGA, JUEZ; DR. MARIO FERNANDO GUERRERO GUTIERREZ, JUEZ; .

Lo que comunico a usted para los fines de ley.

DR. ROBERTO ANTONIO OTAVALO, CASTRO
SECRETARIO DE LA SALA DE FAMILIA, MUJER, NIÑEZ, ADOLESCENCIA Y
ADOLESCENTES INFRACTORES DE LA CORTE

En el Distrito Metropolitano de Quito, hoy día viernes veintisiete de noviembre de dos mil quince, a las diez horas cincuenta y cuatro minutos, ante los Doctores Manuel Antonio Pachacama Ontaneda, Juez de Sustanciación del Tribunal integrado por los señores jueces Drs. Mario Fernando Guerrero Gutiérrez y Bolívar Lema Quinga, de la Sala de la Familia, Mujer, Niñez, Adolescencia y Adolescentes Infractores de la Corte Provincial de Justicia de Pichincha, e infrascrito Secretario Relator que certifica, comparecen los señores: ANA MARÍA RODRÍGUEZ GRANJA con C.C. No. 171128403-2 y C.V. No. 009-0200, acompañada de su defensor Dr. Luis Alfonso Castillo Velasco con Mat. Foro No. 17-1985-6; y, el señor GUSTAVO ADOLFO BORJA



PERUGACHI con C.C. N° 171628771-7 y C.V. No. 021-0112 acompañado de su defensor Dr. Enrique Alberto Arboleda Espinel con Mat. C.A.P. No. 6339, con el objeto de dar cumplimiento a lo dispuesto en auto de fecha veintitrés de noviembre de dos mil quince, a las 10h59; al efecto siendo el día y hora señalados se da por iniciada la audiencia; se solicita por parte del Tribunal a las partes de existir se observe una forma de conciliación, en la cual, se acepta y dicen: "Las partes de común acuerdo, han convenido en llegar al siguiente acuerdo que será aplicable a las causas judiciales No. 10121-2015 y 39177-2013 que se encuentra en apelación en la Corte Provincial de Justicia de Pichincha: **1.-** LAS VACACIONES ESCOLARES DE FIN DE AÑO serán LOS PRIMEROS QUINCE DIAS CON EL PADRE; y



LOS ULTIMOS QUINCE DIAS CON EL PADRE, el intermedio de las vacaciones CON LA MADRE.   **2.-** LOS FERIADOS SON COMPLETOS, desde el inicio del feriado las 18h00 hasta el día final del feriado 18h00.   **3.-** LOS PERMISOS DE SALIDA PAÍS se van autorizar tanto para la madre como para el padre en los periodos de las vacaciones que a cada uno les corresponden.   **4.-** La señora ANA MARIA RODRIGUEZ GRANJA, solicita expresamente que se levante LA PROHIBICION DE SALIDA DEL PAIS que pesa sobre el señor GUSTAVO ADOLFO BORJA PERUGACHI, que lo realizara en el juicio de alimentos que se sustancia en la Unidad Tercera de la Familia, Mujer, Niñez y Adolescencia del Cantón Quito No. 39177-2013, y se acepte dicho levantamiento sin objeción alguna.   **5.-** Las visitas cada

quince días del padre que se encuentran reguladas dentro del Juicio No. 30177-2013, en el horario de entregue el día domingo se modifica a las 18h00. Las partes solicitamos que la Sala apruebe el presente acuerdo mediante resolución y una copia certificada sea remitida al proceso No. 39177-2013 que tramita esta misma Sala en apelación". Con lo manifestado por consuno por las partes procesales, firman para constancia en unidad de acto con el señor Juez de Sustanciación, Jueces Prenombrados e infrascrito Secretario Relator que Certifica.-

Dr. Mânuel Antonio Pachacama Ontaneda
**JUEZ PONENTE**

Dr. Mario Guerrero Gutiérrez
**JUEZ**

Dr. Bolívar Lema Quinga
**JUEZ**

ANA M. RODRÍGUEZ GRANJA
Compareciente

GUSTAVO A. BORJA PERUGACHI
Compareciente

Dr. Luis A. Castillo Velasco

Dr. Enrique A. Arboleda Espinel

Dr. Roberto A. Otavalo Castro
**SECRETARIO RELATOR**

# EXHIBIT G

[NATIONAL COAT OF ARMS]          [SEAL: Thirty-Ninth Public Notary of Quito-Ecuador]

## THIRTY-NINTH PUBLIC NOTARY OF QUITO

## NOTARIAL CERTIFICATE OF PERMISSION
## TO LEAVE THE COUNTRY FOR CHILDREN

In the city of Quito, Metropolitan District, capital of the Republic of Ecuador, today, July 12th, 2017, I received a claim signed by GUSTAVO ADOLFO BORJA PERUGACHI, divorced, invoking the quality of father of the child ███████████ ██████████, in which he requests that, in my capacity as Public Notary, accept the externalization of sworn will to allow permission to leave the country to his daughter ███████████

With the foregoing, because the petition is clear and specific, as well as in accordance with the provisions of articles 109 and 110 of the Code of Childhood and Adolescence, the undersigned Thirty-Ninth Public Notary of Quito, Fernando Arregui Aguirre, in the exercise of the faculties and public faith that I am invested of, I proceeded as follows:

**ONE**.- Constituted in the Notary Office, before me appeared GUSTAVO ADOLFO BORJA PERUGACHI, divorced, who declares to be Ecuadorian, resident of Quito, legally capable and for his own rights, who I give faith of knowing, since he had exhibited his identification documents, which duly certified copies by me are attached to this deed as supporting document.- Warned the appearing party by me the Notary on the effects and results of this writ, as well as examined that it was clear that he appears to grant this document without coercion, threats, reverential fear, promise or seduction, well instructed by me the Notary, in the object and results of this notarial action, which he proceeds freely and voluntarily to celebrate, he says: "GUSTAVO ADOLFO BORJA PERUGACHI, divorced, warned of the penalties of perjury and the obligation to tell the truth, I appear solemnly before you, to declare under oath that: a) the permission to leave the country consigned in the initial petition and which I ratify today in favor of the child ███████████ ██████████, arises from my free and genuine will; b) The request for permission to leave the country that I have presented before you contains true and authentic information; c) I expressly authorize the child ███████████████████to

Fernando Arregui Aguirre, Attorney-at-Law
PUBLIC NOTARY

7

*[NATIONAL COAT OF ARMS]*          *[SEAL: Thirty-Ninth Public Notary of Quito-Ecuador]*

## THIRTY-NINTH PUBLIC NOTARY OF QUITO

travel in company of her mother, ANA MARIA RODRIGUEZ GRANJA, to the city of ORLANDO-FLORIDA, UNITED STATES OF AMERICA, departing July 15, 2017 and returning to the country on August 8, 2017; d) The travel, subsistence and general maintenance expenses of the child ███████████████during the whole trip abroad, are satisfactorily covered, including obviously the round trip air tickets.- UNTIL HERE THE DECLARATION JURY, which was granted with the legal rigor solemnities.- **TWO**.- The documents presented by the petitioner are incorporated into the notarial protocol: a) Copy of the child's ID; b) Copy of the identity card of the petitioner.- CONCLUSION.- Based on the claim submitted, the sworn statement above and the documentation described, the undersigned Notary has reached the conclusion that the authorization granted by the petitioner is appropriate to the provisions of article 109 of the Code of Childhood and Adolescence. For the foregoing, in exercise of public faith of which I am invested and, in accordance with article 110 of the aforementioned Code of Chilhood and Adolescence; the permission to leave the country for the child ███████ ██████████ is solemnized; exclusively in the terms that appear in this affidavit; which to be granted observed the legal precepts of the case and once it was completely read by me, the Notary, it is ratified and signed with me, in a sole act of all which I give faith.- The original of this Act and the documents described in the previous lines are notarized, extending two certified copies of the present Notarial Act to the petitioner, and the present deed is incorporated to the protocol of this Notary.

*(illegible signature)*
GUSTAVO ADOLFO BORJA PERUGACHI
ID No.: *[handwirtten:* ████████*]*
ADRRESS: *[handwirtten: Jose Bosmediano 724]*
TELEPHONE NUMBER: *[handwirtten:* ██████*]*
E-MAIL: *[handwirtten:* ███████████*]*

*[SEAL: 39th Public Notary of Quito – Ecuador]*          *(illegible signature)*
                                                          Femando Arregui Aguirre
                                                          Thirty-Ninth Public Notary
                                                          Quito

Fernando Arregui Aguirre, Attorney-at-Law
PUBLIC NOTARY

**MR. NOTARY PUBLIC OF QUITO:**

GUSTAVO ADOLFO BORJA PERUGACHI, divorced, by my own and personal rights, of Ecuadorian nationality, resident of Quito, and in accordance with the provisions of articles 109 and 110 of the Code of Childhood and Adolescence, published in the Official Registry No. 737, dated Friday, January 3rd, 2003 and effective as of July 3rd of the same year, I request that you grant the corresponding Deed to grant permission to leave the country to the child ████████████ ████████████, according to the following authorization.

**FIRST.- BACKGROUND:** The child ████████████████████ with identification document number 1723207278, will travel in the company of her mother ANA MARIA RODRIGUEZ GRANJA, to the city of ORLANDO-FLORIDA, UNITED STATES OF AMERICA, departing from the country July 15, 2017 and returning on August 8, 2017.-

**SECOND.- PERMISSION TO LEAVE THE COUNTRY:** With the background information, I, the father of the child ████████████████ expressly authorized the departure of my daughter from the country, who will travel in the company of her mother, to ORLANDO-FLORIDA, UNITED STATES OF AMERICA on July 15, 2017. - Additionally, I declare that all expenses of maintenance, subsistence, food, clothing, medicine, housing and other expenses that require to be abroad, are fully covered.

The Notary will notarize this petition together with the Notarial Act.

I authorize Walter Norambuena Seguel, Attorney-at-Law, to present any writ or document that may be necessary.

I subscribe jointly with my Attorney.

(illegible signature)
GUSTAVO ADOLFO BORJA PERUGACHI
ID No.: ID No.: [*handwirtten:* ▮▮▮▮▮]

(illegible signature)
Walter Norambuena Seguel, Attorney-at-Lae
Registration No. 17-2003-424 F.A.P.

C3023540



# NOTARÍA TRIGÉSIMA NOVENA

### PROTOCOLIZACIÓN Nº: 2017.17.01.39.P01666



### DE ACTA NOTARIAL DE
### AUTORIZACIÓN DE SALIDA DEL PAÍS
### DE MENORES

### QUE OTORGA:
### GUSTAVO ADOLFO BORJA
### PERUGACHI

### A FAVOR DE LA MENOR

███████████████████

### CUANTÍA: INDETERMINADA

Quito, 12 de julio del 2017

Di 2 copias
Di 3 copias : 18/08/2017
Di 4 copias 28/02/2018
(L.A.C)



Dr. Fernando Arregui Aguirre
NOTARIO



GJ020541

# NOTARÍA TRIGÉSIMA NOVENA

### ACTA NOTARIAL DE AUTORIZACIÓN
### DE SALIDA DEL PAÍS DE MENORES

En la ciudad de Quito, Distrito Metropolitano, capital de la República del Ecuador, hoy día , doce de julio del dos mil diecisiete, recibí un pedido que ha sido suscrito por el señor GUSTAVO ADOLFO BORJA PERUGACHI, de estado civil divorciado, invocando la calidad de padre de la menor ███████ en el que solicita que, en mi calidad de Notario Público, recepte su exteriorización de voluntad juramentada de autorización de salida del país de su hija ███████ .- Con lo anteriormente señalado, por ser clara y concreta la petición, así como procedente en razón de lo previsto en los artículos ciento nueve y ciento diez del Código de la Niñez y Adolescencia, el suscrito Notario Trigésimo Noveno del cantón Quito, doctor Fernando Arregui Aguirre, en ejercicio de las facultades y de la fe pública que me hallo investido, procedí del siguiente modo: **UNO.-** Constituido en el Despacho Notarial, compareció ante mi, el señor GUSTAVO ADOLFO BORJA PERUGACHI, de estado civil divorciado, quien declara ser de nacionalidad ecuatoriana, mayor de edad, domiciliado en esta ciudad de Quito, legalmente capaz y por sus propios derechos, a quien de conocer doy fe, en virtud de haberme exhibido sus documentos de identificación cuyas copias fotostáticas debidamente certificadas por mi agrego, a esta acta como documentos habilitantes.- Advertido el compareciente por mi el Notario de los efectos y resultados de esta escritura, así como examinado que fue manifiesta que comparece al otorgamiento de esta escritura sin coacción, amenazas, temor reverencial, ni promesa o seducción , bien instruido por mi el Notario, en el objeto y resultados de esta actuación notarial, que a celebrarla procede libre y voluntariamente, dice: "YO, GUSTAVO ADOLFO BORJA PERUGACHI,





**Dr. Fernando Arregui Aguirre**
NOTARIO

de estado civil divorciado, advertido de las penas del perjurio y de la obligación de decir la verdad, en forma solemne me presento ante usted, para declarar bajo juramento que: a) La autorización de salida del país consignada en la petición inicial y que hoy la ratifico en favor de la menor de edad ███████████████ surge de mi libre y genuina voluntad ; b) La solicitud de autorización de salida fuera del país a usted presentada contiene información verdadera y auténtica; c) Expresamente autorizo que la menor ███████████ viaje en compañía de su madre la señora ANA MARIA RODRIGUEZ GRANJA, con destino a la ciudad de ORLANDO-FLORIDA, ESTADOS UNIDOS DE NORTEAMERICA, siendo su salida a partir del quince de julio del dos mil diecisiete y su retorno al país el ocho de agosto del dos mil diecisiete; d) Los costos de viaje, subsistencia y en general mantenimiento de la menor ███████████ por todo el viaje al exterior, se hallan satisfactoriamente cubiertos, obviamente incluidos los pasajes aéreos de ida y retorno .- HASTA AQUÍ LA DECLARACIÓN JURAMENTADA, que fue otorgada con las solemnidades legales de rigor.- **DOS.**- Se incorporan al protocolo notarial los documentos acompañados por el peticionario y que son: a) Copia de la cédula de la menor; b) Copia de la cédula del peticionario.- CONCLUSIÓN.- En base a la solicitud presentada, de la declaración juramentada que antecede y de la documentación descrita , el suscrito Notario ha llegado a la conclusión de que la autorización concedida por el peticionario se halla conforme a lo previsto en el artículo ciento nueve del Código de la Niñez y Adolescencia. Por lo expuesto, en ejercicio de la fe pública de la que me hallo investido y de conformidad con el artículo ciento diez del mencionado Código de la Niñez y Adolescencia; queda solemnizada la autorización de salida de la menor ███████████ ███████ exclusivamente en los términos que aparecen de la



03027542



# NOTARÍA TRIGÉSIMA NOVENA

declaración juramentada; para su otorgamiento se observaron los preceptos legales del caso y leída que le fue íntegramente la presente al compareciente por mí, el Notario, se ratifica y firma conmigo, en unidad de acto de todo lo cual doy fe.- El original de esta Acta y los documentos descritos en líneas anteriores se protocolizan, extendiendo dos copias certificadas de la Presente Acta Notarial al peticionario, y se incorpora al protocolo de esta Notaria la presente escritura.-

GUSTAVO ADOLFO BORJA PERUGACHI

C.C. ▉▉▉▉▉▉▉

DIRECCION: José Bosmediano 724

TELEFONO: ▉▉▉▉▉▉

CORREO: ▉▉▉▉▉▉▉▉▉▉▉▉

Dr. Fernando Arregui Aguirre
Notario Trigésima Noveno
Cantón - Quito

Dr. Fernando Arregui Aguirre
NOTARIO

C.3020543

**SEÑOR NOTARIO PÚBLICO DEL CANTÓN QUITO:**

GUSTAVO ADOLFO BORJA PERUGACHI, de estado civil divorciado, por mis propios y personales derechos, de nacionalidad ecuatoriana, domiciliado en esta ciudad de Quito, y de conformidad con lo previsto en los artículos 109 y 110 del Código de la Niñez y Adolescencia, publicado en el Registro Oficial No. 737 de Viernes 3 de enero del 2003 y vigente desde el 3 de julio del mismo año, solicito a Usted, señor Notario, se digne levantar el Acta en la que se haga constar la autorización de salida del país de la menor de edad ██████████████, de acuerdo a la siguiente autorización:

**PRIMERA.- ANTECEDENTES: La** menor de edad ████████ ████████, con número de cédula de ciudadanía 1723207278, viajará en compañía de su madre la señora ANA MARIA RODRIGUEZ GRANJA, con destino a la ciudad de ORLANDO-FLORIDA, ESTADOS UNIDOS DE NORTEAMERICA, siendo su salida del país a partir del 15 de julio del 2017 y su retorno el 8 de agosto del 2017. -

**SEGUNDA.- AUTORIZACIÓN DE SALIDA DEL PAÍS: Con** los antecedentes expuestos, yo, el progenitor de la menor de edad ████████  ████████, autorizo expresamente la salida del país de mi hija, quien viajará en compañía de su madre, con destino a la ciudad de ORLANDO-FLORIDA, ESTADOS UNIDOS DE NORTEAMERICA a partir del 15 de julio del 2017.- Adicionalmente, declaro que todos los gastos de manutención, subsistencia, alimentación, vestido, medicinas, vivienda y demás gastos que demanden su estadía en el exterior, se encuentran totalmente cubiertos.

Usted, señor Notario, se servirá protocolizar la presente conjuntamente con el Acta Notarial.

Autorizo al doctor Walter Norambuena Seguel, para que presente cualquier escrito o documento que fuere necesario.

Suscribo conjuntamente con mi Abogado patrocinador.


GUSTAVO ADOLFO BORJA PERUGACHI

C.C. ▮▮▮▮▮▮▮▮


Dr. Walter Norambuena Seguel

MAT. 17-2003-424 F.A.P.

[NATIONAL COAT OF ARMS]                    [SEAL: Thirty-Ninth Public Notary of Quito-Ecuador]

**THIRTY-NINTH PUBLIC NOTARY OF QUITO**

**REGISTRATION NO. 2017.17.01.39.P01666**

**NOTARIAL CERTIFICATE OF**
**PERMISSION TO LEAVE THE COUNTRY**
**FOR CHILDREN**

**THAT GRANTS:**
**GUSTAVO ADOLFO BORJA**
**PERUGACHI**

**IN FAVOR OF THE CHILD**

███████████████████

**AMOUNT: INDETERMINATED**

**Quito, July 12th, 2017**

**2 copies**
[handwritten: 3 copies. August 13th, 2017]

**(L.A.C)**

Fernando Arregui Aguirre, Attorney-at-Law
PUBLIC NOTARY

# EXHIBIT H

[LOGO: *A&A*
*ARBOLEDA & ASOCIADOS*
*LAW FIRM*]

**JUDGE OF THE THIRD SPECIALIZED LEGAL UNIT OF FAMILY, WOMEN, CHILDHOOD AND ADOLESCENCE OF THE CITY OF QUITO – PICHINCHA**

**REPORTING JUDGE: PABLO ALEJANDRO JACOME JARAMILLO, ATTORNEY-AT-LAW**

**GUSTAVO ADOLFO BORJA PERUGACHI**, within the **Case No. 17203-2013-39177**, I appear before you, express and request:

I

Through Settlement Agreement signed by Ana Maria Rodriguez Granja and the undersigned, dated July 29th, 2015, 11h39, the same one that was ratified by the Chamber of Family, Women, Childhood, Adolescence and Offender Teenagers Matters of the Provincial Court of Pichincha, the VISITATION RIGHTS IN FAVOR OF MY DAUGHTER ████████████████████ was agreed, among other things, it establishes that the parties will grant permission to leave the country  in favor of my daughter so she can enjoy vacations with her father as well as with her mother.

Therefore, complying with the aforementioned agreement, on July 12th, 2017, I granted permission to leave the country in favor to my daughter ████████ ████████, before the Thirty-Ninth Public Notary of Quito, Fernando Arregui Aguirre, Atorney-at-Law, so she can travel to the **UNITED STATES OF AMERICA, FROM <u>JULY 15TH, 2017 TO AUGUST 8TH, 2017</u>**, on the word of the third certified copy of the deed I attach to the present.

It is the case that **UNTIL THE PRESENT DATE, MY DAUGHTER HAS NOT RETURNED** to the country, breaking like this, the mother of my daughter, ANA MARIA RODRIGUEZ GRANJA, the agreement we reached, particularly when before you, Your Honor, and as it is recorded within the files, she **AFFIRMED AND RATIFIED THAT SHE WOULD NOT STAY TO LIVE IN THE UNITED**

[LOGO: *A&A*
*ARBOLEDA & ASOCIADOS*
*LAW FIRM*]

**STATES OF AMERICA, AND THAT SHE WAS NOT INTERESTED IN LIVING THERE ILLEGALLY**.

Your Honor, my daughter travelled with a tourist visa, to spend vacations and has been illegally kept by her mother, staying in the United States of America, risking my daughter's integrity since she has no resident status or United State citizenship.

Due to my constant calls to my daughter who had affirmed that her return travel has postponed for a week, demonstrating that her mother was inducing her to lie, on August 19th, 2017, the mother, arrogantly and easily, sent me an electronic mail, that textually says:

"*Hello:*

*First, I wanted to tell you that* ▮ *is fine, as I have told you she has her phone all the time if you want to call her.*

*We have been in the process with the lawyer, as you knew, and we have presented most of the papers we need to change the Visa. As you know, this is a process I have been fighting for several years and not only for me and my family but thinking on the horizon that this would open to* ▮. *I know this is not easy and I ask you to please do not leave hate and resentment aside and focus on* ▮, *she admires and loves you, she is all the time telling us anecdotes with you or stories you have told her; I would like that connection to continue. The lawyer has said that the process may last between 8 to 12 months or even less. I offer you an airplane ticket for you to come to see* ▮ *by that time, talking and planning with her.*

*If this situation makes you mad, I understand and I do not expect you to understand me but please understand* ▮, *do not let to write to her; do not get angry with her. We have a wonderful daughter that is entering a totally different phase.*

▮ *is starting school here on Monday and she is very excited about it. I repeat I know this is not easy and I would like to reach agreements that will help you and* ▮ *be together, always considering the opinion of my* ▮, *Summers with me or you to come, etc. In the same way, I offer you a cake again for you to visit her and you can always talk to her.*

*Please do not get mad with her, this is not the conventional way to do things but the future of my whole family is at stake, and* ▮ *is part of that family.*

*I hope we can be in peace for our daughter.*

*Regards,*

AV. 12 DE OCTUBRE N21-155 (959) Y VICENTE RAMON ROCA
EDF. MARIANA DE JESUS 3TH FLOOR OF. 303/304
PHONES: 2544 767 – 2903 359 – 2902 229
E-mail: arboleda_asociados@hotmail.com
QUITO-ECUADOR

[LOGO: *A&A*
*ARBOLEDA & ASOCIADOS*
*LAW FIRM*]

*ANA MARIA RODRIGUEZ*
*(emoticons) AMR"*

Your Honor, as you can read, the mother of my daughter had everything planned to, deceiving me, take my daughter and KEEP HER ILLEGALLY IN THE UNITED STATES OF AMERICA, without my consent or permission. It is so ridiculous to read the statement that I can go to see my daughter whenever I want to as if it were possible to travel to the United States every week of it were around the corner.

II

Due to the aforementioned antecedents, I **REQUEST TO YOU**, Your Honor, **to order the so established in article 125 of the Organic Code of Childhood and Adolescence because the mother of my daughter has obstructed the visitation rights ordered by your authority and I have not seen my daughter since July 12th, 2017.**

I will continue receiving notifications that belong to me in the Judicial Mailbox No. 2617 of the Former Palace of Justice of Quito and in the electronic mail arboleda_asociados@hotmail.com, before indicated.

For being a matter of justice, please order according to what has been requested.

Dully authorized, I sign jointly with my Court Agent.

(illegible signature)                           (illegible signature)
Gustavo Borja P.                              Enrique Arboleda E.
                                              Registration No. 6339 C.A.P.
                                              Attorney-at-Law



**A&A**

# ARBOLEDA & ASOCIADOS
### ESTUDIO JURIDICO

**SEÑOR JUEZ UNIDAD JUDICIAL ESPECIALIZADA TERCERA DE LA FAMILIA, MUJER, NIÑEZ Y ADOLESCENCIA CON SEDE EN EL DISTRITO METROPOLITANO DE QUITO, PROVINCIA DE PICHINCHA**

**JUEZ PONENTE: DR. PABLO ALEJANDRO JACOME JARAMILLO**

**ING. GUSTAVO ADOLFO BORJA PERUGACHI,** dentro del **Juicio No. 17203-2013-39177,** ante usted comparezco, expongo y solicito:

I

Mediante Acta de Acuerdo suscrita por la señora Ana María Rodríguez Granja y mi persona, de 29 de julio del 2015, las 11h39, la misma que fue ratificada por la Sala de Familia, Mujer, Niñez, Adolescencia y Adolescentes Infractores de la Corte Provincial de Pichincha, acordamos el REGIMEN DE VISITAS A FAVOR DE MI HIJA ▇▇▇▇▇▇▇▇ entre otras cosas se determinó que las partes otorgarían los permisos de salida del país en favor de mi hija para que esta goce de las vacaciones tanto con su padre como con su madre.

Es así señor Juez que dando cumplimiento a dicho acuerdo otorgue con fecha 12 de julio de 2017 un permiso de salida del país en favor de mi hija ▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇, en la Notaria Trigésima Novena del Cantón Quito, ante el Notario Dr. Fernando Arregui Aguirre para que viaje a los **ESTADOS UNIDOS DE AMERICA DEL 15 DE JULIO DE 2017 AL OCHO DE AGOSTO DE 2017,** conforme consta de la tercera copia certificada que adjunto a la presente.

Es del caso que **HASTA LA PRESENTE FECHA MI HIJA NO A RETORNADO** al país, incumpliendo por parte de la madre de mi hija señora ANA MARÍA RODRIGUEZ GRANJA, el acuerdo al que llegamos más aun cuando ante vuestra autoridad y consta de actas **AFIRMO Y RATIFICO QUE NO SE QUEDARIA A VIVIR EN LOS ESTADOS UNIDOS, y QUE NO ERA DE SU INTERÉS VIVIR ALLA DE MANERA ILEGAL.**

Señor Juez mi hija viajo un con una visa de turista, de vacaciones y ha sido retenida de manera ilegal por parte de su madre quedándose en los Estados Unidos, arriesgando la integridad de mi hija por cuanto no tienen la calidad de residentes o ciudadanos norteamericanos.



# A&A

# ARBOLEDA & ASOCIADOS
## ESTUDIO JURIDICO

En virtud de mis constantes llamadas a mi hija quien me manifestaba que su viaje de retorno se había aplazado por una semana, demostrando que su madre le inducía a mentir, con fecha 19 de agosto de 2017 la madre de una manera muy arrogante y por demás fácil me remite un maíl el cual copia textualmente:

"Hola:

Primero quería contarte que ███ esta bien como te dije tiene su teléfono con ella todo el tiempo si la quieres llamar.

Hemos estado en el proceso de el abogado como sabías y ya metimos la mayoría de papeles que necesitábamos para el cambio de Visa. Como sabías este es un proceso por el cual he estado luchando por años y no solo por mi y mi familia si no pesando en el horizonte que le voy a abrir a ███ con esto. Se que no es fácil y te pido de favor no pongas a un lado tu odio y rencores y te concentres en ███, ella te admira y te quiere mucho siempre nos cuenta anécdotas de ti con ella o historias que les cuentas y quiero que esa conección se mantenga. El abogado nos indicó que el proceso puede durar de 8-12 meses o incluso menos. Yo te ofrezco un pasaje para que vengas a ver a ███ en ese entonces, hablado y planéalo con ella.

Si te enoja esta situación yo entiendo y no espero que me entiendas a mi pero si a ███, no dejes de escribirle no te enojes con ella tenemos una hija maravillosa que esta entrando en una etapa muy diferente.

███ empieza el colegio acá el día lunes y esta muy emocionada. Te repito se que no es fácil y quiero llegar a acuerdos que ayuden a que tu y ███ estén juntos tomando en cuenta siempre la opinión de mi ███, Veranos con migo, o que la vengas etc. Igual te vuelvo a ofrecer un pastel para que la visites y puedes hablar con ella siempre.

Por favor no te pegues con ███, no es la manera mas convencional de hacer las cosas pero esta en juego el futuro de mi familia entera y Emy es parte de esa familia.

Espero podamos estar en paz por nuestra hija.

saludos,

*ANA MARIA RODRIGUEZ*
🐱🐱 *AMR*

AV. 12 DE OCTUBRE N21-155 (959) Y VICENTE RAMÓN ROCA EDF.: MARIANA DE JESÚS 3er, PISO OF. 303/304
TELÉFONOS: 2544 767 • 2903 359 • 2902 229



# A&A

## ARBOLEDA & ASOCIADOS
### ESTUDIO JURIDICO

Señor Juez como usted puede leer la madre de mi hija tenía todo planificado para con engaños llevarse a mi hija y **RETERNERLA DE MANERA ILEGAL EN LOS ESTADOS UNIDOS**, sin mi consentimiento ni permiso, es tan ridículo leer que manifiesta que puedo ir a ver a mi hija cuando quiera como si uno pudiera salir a los Estados Unidos todas las semanas o estuviera a la vuelta de la esquina.

## II

Con los antecedentes expuestos **SOLICITO A USTED SENOR** Juez se **disponga lo consagrado en el Art. 125 del Código Orgánico de la Niñez y Adolescencia ya que por parte de la madre de mi hija se está obstaculizando el régimen de visitas dispuesto por vuestra autoridad por cuanto no veo a mi hija desde el 12 de julio de 2017.**

Notificaciones que me correspondan las seguiré recibiendo en el Casillero Judicial No. 2617 del Ex Palacio de Justicia de Quito y en el correo electrónico arboleda_asociados@hotmail.com, señalados para el efecto.

Por ser de Justicia,

Sírvase proveer conforme lo solicitado.

Debidamente autorizado firmo conjuntamente con mi abogado patrocinador.


Ing. Gustavo Borja P.
C.C. 17 1628 7717.

Dr. Enrique Arboleda E. MSc
MAT. 6339 C.A.P
**ABOGADO**

# EXHIBIT I

**REPUBLIC OF ECUADOR**
www.funcionjudicial-pichincha.gob.ec

Case No. 17203-2013-39177

Mailbox No.: **2617**

Quito, Thursday, September 7th, 2017
TO: BORJA PERUGACHI GUSTAVO ADOLFO
ATTORNEY-AT-LAW: ARBOLEDA ESPINEL ENRIQUE ALBERTO

Within the Special Case No. 17203-2013.39177 that follows BORJA PERUGACHI GUSTAVO ADOLFO against RODRIGUEZ GRANJA ANA MARIA, there is the following:

**LEGAL UNIT OF FAMILY, WOMEN, CHILDHOOD AND ADOLESCENCE OF MARISCAL SUCRE, QUITO – PICHINCHA.-** Quito, Thursday, September 7th, 2017, 14h59.- Incorporate to the records the writ presented on September 5th, 2017, 16h02, with a writing for the following legal purposes:

ANA MARIA RODRIGUEZ GRANJA is required to observe and comply with the agreement reached by the parties, related to the visitation rights and schedule of the child ▮▮▮▮▮▮▮▮, the same one that was approved via resolution by the Provincial Court of Justice of Pichincha, Chamber of Family, Women, Childhood, Adolescence and Offender Teenagers Matters, dated December 18th, 2015.

In order to protect the right to defense established by the Constitution of the Republic and by the principle of challenge and response, be the counterparty notified with the content of the writ presented by the appearing party, writ that is been answered, so she may be able to pronounce within 72 hour.

PLEASE NOTIFY.

f) JACOME JARAMILLO PABLO ALEJANDRO, JUDGE OF THE LEGAL UNIT.

I hereby notify to the appropriate purposes.
[*SEAL: (illegible signatures)*]
LIVINGSTON RAUL HEREDIA CAMPAÑA
**SECRETARIAT OF THE THIRD LEGAL UNIT OF FAMILY, WOMEN, CHILDHOOD AND ADOLESCENCE**

**REPÚBLICA DEL ECUADOR**
www.funcionjudicial-pichincha.gob.ec

Juicio No: 17203-2013-39177

Casilla No: **2617**

Quito, jueves 7 de septiembre del 2017

A: BORJA PERUGACHI GUSTAVO ADOLFO

Dr./Ab.: ARBOLEDA ESPINEL ENRIQUE ALBERTO

En el Juicio Especial No. 17203-2013-39177 que sigue  BORJA PERUGACHI GUSTAVO ADOLFO en contra de RODRIGUEZ GRANJA ANA MARIA, hay lo siguiente:

**UNIDAD JUDICIAL DE FAMILIA, MUJER, NIÑEZ  y ADOLESCENCIA CON SEDE EN LA PARROQUIA MARISCAL SUCRE DEL DISTRITO METROPOLITANO DE QUITO, PROVINCIA DE PICHINCHA DE PICHINCHA.-** Quito, jueves 7 de septiembre del 2017, las 14h59.- Agréguese a los autos el escrito presentado de fecha 05 de septiembre de 2017 a las 16h02 con una escritura para los fines legales pertinentes.- Se le requiere a la señora ANA MARÍA RODRÍGUEZ GRANJA, observe y cúmpla el acuerdo llegado por las partes relativo al régimen y horario de visitas de la niña ███████████, mismo que fuera aprobado mediante resolución por la Corte Provincial de Justicia de Pichincha , Sala de Familia, Mujer Niñez, Adolescencia y Adolescentes Infractores de fecha 18 de diciembre del 2015.- A fin de precautelar el derecho a la defensa consagrado en la Constituciónde la República y por principio de contradicción, con el contenido del escrito presentado por el compareciente en escrito que se atiende, se corre traslado a la contraparte para que en el término de 72 horas se pronuncie al respecto.- NOTIFIQUESE.  f).- JACOME JARAMILLO PABLO ALEJANDRO, JUEZ DE LA UNIDAD JUDICIAL.

Lo que comunico a usted para los fines de ley.

LIVINGSTON RAUL HEREDIA CAMPAÑA

**SECRETARIA   DE LA UNIDAD JUDICIAL TERCERA DE LA FAMILIA, MUJER, NIÑEZ Y ADOLESCENCIA**